**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

IN RE APPLICATION OF SHERVIN
PISHEVAR FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28
U.S.C. § 1782

Case No. _____.

*EX PARTE* **APPLICATION AND PETITION FOR AN ORDER TO CONDUCT**
**DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §**
**1782**

Based on the concurrently filed Memorandum of Law, the Declaration of Lucas Bento

dated August 6, 2021 (the "Bento Declaration"), the Declaration of Jenny Campbell Afia, dated

August 6, 2021 ( the "Afia Declaration"), and the Declaration of Lord Macdonald of River Glaven

Kt QC, dated July 30, 2021 (the "Macdonald Declaration"), Petitioner Shervin Pishevar hereby

respectfully applies to this Court for an Order pursuant to 28 U.S.C § 1782 and Federal Rules of

Civil Procedure 26, 30, 34, and 45 permitting Mr. Pishevar to conduct discovery for use in

contemplated foreign proceedings in the form of the subpoenas attached as Exhibit 2 to the Bento

Declaration.

Dated:  Washington, D.C.
       August 6, 2021

Respectfully submitted,

*/s/ Valerie J. Ramos*

Valerie J. Ramos (D.C. Bar No. 241050)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, NW Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
valerieramos@quinnemanuel.com

Lucas V.M. Bento (*pro hac vice forthcoming*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
lucasbento@quinnemanuel.com

*Attorneys for Petitioner Shervin Pishevar*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| |
|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 |

Case No. _____.

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

I.     FACTUAL BACKGROUND ..........................................................................................2

     A.    The Parties .........................................................................................................2

     B.    Petitioner's Encounter With British Police.........................................................3

     C.    U.S.-Based Reporter (Mr. Marcus Baram) Obtains Forged Police Report ............4

     D.    Mr. Baram Makes Inquiries About The Arrest And The Forged Police Report........................................................................................................................4

     E.    Mr. Baram's Publication Of Article Disseminating Forged Police Report ............6

     F.    Petitioner Uncovers, And British Police Confirm, That Report Is Fake .................7

     G.    Petitioner's Contemplated Proceedings .................................................................8

     H.    Prior Section 1782 Applications .........................................................................10

     I.    Respondent Possesses Highly Material Information Concerning The U.K. Source and Forgers .............................................................................................13

II.    ARGUMENT ...............................................................................................................13

     A.    Legal Framework ................................................................................................13

     A.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782. ..............16

          1.    Respondent Is "Found" In The District of Columbia. ..............................16

          2.    The Discovery Sought Is For Use In Foreign Proceedings.......................17

          3.    Petitioner Is An "Interested Person."........................................................20

     B.    All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks. ........................................................21

          1.    The First *Intel* Factor Favors Granting Discovery. ..................................22

          2.    The Second *Intel* Factor Favors Granting Discovery. ..............................22

          3.    The Third *Intel* Factor Favors Granting Discovery. ..................................23

          4.    The Fourth *Intel* Factor Favors Granting Discovery................................24

III.   CONCLUSION............................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## Cases

*Al Fayed v. C.I.A.*,
   229 F.3d 272 (D.C. Cir. 2000) .................................................................. 16

*Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014).......................................................... 19

*Attorney Gen. of British Virgin Islands v. Hyman*,
   No. 1:19-MC-164-RCL, 2020 WL 2615519 (D.D.C. May 23, 2020) .................. 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)................................................................ 16, 23

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
   613 F. App'x 319 (5th Cir. 2015) ............................................................. 19

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ............................................................. 14

*Hertz Corp. v. Friend*,
   559 U.S. 77, 93 (2010)........................................................................... 17

*HT S.R.L. v. Velasco*,
   125 F. Supp. 3d 211 (D.D.C. 2015) .......................................................... 15

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
   121 F.3d 77 (2d Cir. 1997)...................................................................... 24

*In re Application of Caratube In'l Oil Co., LLP*,
   730 F. Supp. 2d 101 (D.D.C. 2010) ..................................................... 22, 23

*In re Application of Euromepa* S.A.,
   51 F.3d 1095 (2d Cir.1995)........................................................... 16, 22, 23

*In re Barnwell Enters. Ltd.*,
   265 F. Supp. 3d 1 (D.D.C. 2017) ...................................................... 20, 23, 24

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)..................................................................... 24

*In re Catalyst Managerial Servs., DMCC*,
   680 F. App'x 37 (2d Cir. 2017) ................................................................ 19

*\*In re DiGiulian*,
   314 F. Supp. 3d 1 (D.D.C. 2018) ......................................................... 15, 17

*In re Ex Parte Application of SERETM*,
  2013 WL 6141655 (N.D. Cal. Nov. 21, 2013) ............................................................ 21, 25

*In re Furstenberg Fin. SAS*,
  No. 18-MC-44(JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) .................................... 18

*In re Gianoli Aldunate*,
  3 F.3d 54 (2d Cir. 1993) ................................................................................................ 16

*In re Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) ........................................................................................ 18

*In re Letter of Request from Supreme Court of H.K.*,
  138 F.R.D. 27 (S.D.N.Y. 1991) ...................................................................................... 15

*In re Letter of Request from the Crown Prosecution Serv.*,
  870 F.2d 686 (D.C. Cir. 1989) ........................................................................................ 17

*In re Nat'l Syndicate for Elec. Energy*,
  No. 1:13-MC-20 GBL/TCB, 2014 WL 130973 (E.D. Va. Jan. 14, 2014) ........................... 15

*In re Rivada Networks*,
  230 F. Supp. 3d 467 (E.D. Va. 2017) .............................................................................. 14

*\*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ............................................................ 16, 19, 20, 22, 23, 24

*In re: Application of Bracha Found.*,
  663 F. App'x 755 (11th Cir. 2016) .................................................................................. 18

*\*In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in
  Foreign Proceedings Pursuant to 28 U.S.C. 1782*,
  2:21-mc-00175-JAK-KS (C.D. Cal May 25, 2021) ............................................................ 21

*\*In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign
  Proc. Pursuant to 28 U.S.C. § 1782*,
  439 F. Supp. 3d 290 (S.D.N.Y. 2020) .......................................................................... 18, 21

*\*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................ 21, 22, 23, 24

*Lancaster Factoring Co. v. Mangone*,
  90 F.3d 38 (2d Cir. 1996) .............................................................................................. 16

*Lazaridis v. Intl. Ctr. for Missing and Exploited Children, Inc.*,
  760 F. Supp. 2d 109 (D.D.C. 2011), *aff'd sub nom.*
  *In re Application for an Or. Pursuant to 28 U.S.C. §1782*,
  473 Fed. Appx. 2 (D.C. Cir. 2012) .............................................................................. 20, 21

*Matter of de Leon*,
    19-MC-0197, 2020 WL 1047742 (D.D.C. Mar. 4, 2020).................................. 17, 18, 20, 21

## Statutory Authorities

28 U.S.C. § 1782.................................................................................................................. passim

Shervin Pishevar ("Petitioner"), respectfully submits this Memorandum of Law in support of his *ex parte* Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain limited discovery from Fusion GPS ("Fusion" or the "Respondent"),[1] in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas") (the "Application").[2]

## PRELIMINARY STATEMENT

Petitioner is the victim of an international criminal conspiracy which sought to destroy his reputation and character. This Application arises from the forgery of a British police report ("Forged Police Report") that was supplied by someone in the United Kingdom ("UK Source") to Respondent who in turn gave it to a journalist—Mr. Marcus Baram—who used the Forged Police Report in an article published by Fast Company, a leading technology news magazine ("Baram Article").[3] The article, which played a key role in disseminating false information, caused Petitioner to suffer irreparable harm to his reputation and standing. Based on information produced in a separate Section 1782 proceeding, it is highly likely that the Respondent has identifying information about the UK Source and others involved in the creation and distribution of the Forged Police Report (the "Identifying Information"). The Respondent therefore has possession, custody, or control of information to identify the UK Source and provenance of the Forged Police Report, including anyone who funded or directed its creation or distribution ("Forgers"). Petitioner brings this Application to obtain that information for use in Contemplated Criminal and Civil Proceedings, as defined below, in England against the Forgers ("Contemplated English Proceedings").

In seeking to uncover the identity of the Respondent, the Petitioner also filed in the U.S. District Court for the Southern District of New York ("SDNY") two Section 1782 actions against Fast Company and Mr. Baram to obtain the name of the Respondent ("SDNY 1782 Action"). Mr.

---

[1]   Based on publicly available information, it appears that Fusion GPS is a trade name of Bean LLC. *See* Declaration of Lucas Bento, dated August 6, 2021 ("Bento Decl.") Exs. 3–4. Out of an abundance of caution, Petitioner's 1782 Application is also directed at Bean LLC. *See* Bento Decl. Ex. 2 (subpoenas directed at "Bean LLC (A/K/A Fusion GPS)").

[2]   The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated August 6, 2021.

[3]   Declaration of Jenny Cambpbell Afia, dated August 6, 2021 ("Afia Decl.") ¶ 21 & Ex. 5.

Baram, however, sought to shield the identity of the Respondent by relying on the reporter's privilege. After Petitioner exhausted additional potential sources of that information, the SDNY court ultimately held that Petitioner successfully overcame the reporters' privilege by making, *inter alia*, a clear and convincing showing that the identity of the Respondent was not obtainable from other sources and, accordingly, ordered Mr. Baram to disclose the identity of the Respondent. Mr. Baram subsequently objected to that court order. While the SDNY Action was pending and Mr. Baram's objections were pending, the Petitioner was informed by a private investigator ("Investigator") that he had information to identify the Respondent but would not disclose that information absent a subpoena. Petitioner subsequently filed in the U.S. District Court for the Central District of California a Section 1782 action to obtain that information from the Investigator. On June 18, 2021, the Investigator produced information identifying the Respondent as Mr. Baram's source. Petitioner therefore initiated the present Section 1782 action to obtain infromation from the Respondent about the identify of the UK Source and provenance of the Forged Police Report.

This Application meets all of the requirements of Section 1782. The Respondent resides or is found in this district. The discovery sought by the Petitioner is relevant to the issues at stake in the Contemplated English Proceedings. Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel* decision favor the discovery sought by Petitioner. Accordingly, Petitioner respectfully requests that the Court grant his Application and permit him to serve the Subpoenas on the Respondent.

## I.   FACTUAL BACKGROUND

### A.   The Parties

**Shervin Pishevar.** Shervin Pishevar is a angel and venture investor, entrepreneur and philanthropist.[4] He is the co-founder of Sherpa Capital, a leading venture capital firm. He was chosen by the U.S. Government as an "Outstanding American by Choice," one of the only 100

---

[4] Afia Decl. ¶ 9; Declaration of Lord Macdonald of River Glaven Kt QC, dated July 30, 2021 ("Macdonald Decl.") ¶ 8.

naturalized Americans to be so chosen since the inception of the award.[5]  In 2015, he was appointed by the U.S. President to the J. William Fulbright Foreign Scholarship Board.[6]  Petitioner is also Co-Founder of the Pishevar-Haynes Foundation, a philanthropic organization focused on amplifying excellence among underrepresented individuals by leveraging technology to increase access to education, wellness, economic resources, and a cleaner planet.

    ***Respondent.***   The Respondent is a Washington, DC-based private investigations and intelligence firm that provides opposition research, strategic intelligence, and due diligence services to corporations, law firms, and investors worldwide.[7]

### B.    Petitioner's Encounter With British Police

    On May 27, 2017, Petitioner had consensual sexual intercourse with a female acquaintance at a hotel in London.[8]  Later that day, Petitioner was woken by police officers in his hotel room and arrested by City of London Police ("COLP") on suspicion of sexual assault.[9]  The arrest was a total shock to the Petitioner, who was understandably distressed and traumatized by it.[10]  Petitioner was released on bail on May 28, 2017, and on July 28, 2017, the COLP confirmed to Petitioner that they would be taking no further action against him.[11]

    After he received inquiries into the arrest by a journalist for a UK newspaper (the *Sun*), on June 21, 2017, Petitioner obtained an injunction in England preventing the *Sun* from naming or identifying Petitioner in relation to the arrest in any future publications (the "Injunction").[12]  The Injunction was granted on the basis that if the *Sun* published an article speculating about Petitioner's arrest, it would have been a gross invasion of his privacy rights as protected by Article 8 of the Human Rights Act 1998.[13]

---

[5]  Macdonald Decl. ¶ 8.
[6]  Bento Decl. Ex. 11.
[7]  Bento Decl. Ex. 13.
[8]  Afia Decl. ¶¶ 10-11.
[9]  *Id.* ¶ 10.
[10]  *Id.* ¶ 11.
[11]  *Id.* ¶ 12.
[12]  *Id.* ¶ 13.
[13]  *Id.* ¶ 13.

On August 1, 2017, COLP released a press statement which stated: "Following an investigation into a report of a rape at a location on Poultry, EC2 [London] on Saturday 27 May 2017, we can confirm that no further action will be taken.  A 43-year-old man from San Francisco was initially arrested on suspicion of rape before being released under investigation."[14]  Petitioner was not named, and per the press statement on August 1, 2017, COLP announced the investigation had ended.[15]

### C.    U.S.-Based Reporter (Mr. Marcus Baram) Obtains Forged Police Report

Based on information provided to Petitioner in response to prior Section 1782 subpoenas to Fast Company in the SDNY 1782 Actions, *see infra* I. H, in September 2017, Mr. Marcus Baram met with the Respondent in a café in Washington, D.C.[16]  At that meeting, the Respondent handed Mr. Baram a USB pen drive containing a copy of the Forged Police Report, which the Respondent allegedly obtained from a "male lawyer in the United Kingdom"—the UK Source.[17]  The Respondent also relayed additional fabricated allegations communicated by the UK Source concerning the arrest, including that the Petitioner purportedly paid the alleged victim money to "drop[ ] the charges", that the "[G]old [C]ommand" of the British Police was allegedly involved, and that the British police were allegedly "outraged" once the charges were dropped ("Other False Information").[18]



Figure 1: Potential Distribution Chain of Forged Police Report and Other False Information

---

[14]  *Id.* ¶ 14.
[15]  *Id.* ¶ 14.
[16]  Bento Decl. Ex. 8; Macdonald Decl. Ex. 8.
[17]  Bento Decl. Exs. 6, 8, 9.
[18]  Bento Decl. Ex. 9.

### D.    Mr. Baram Makes Inquiries About The Arrest And The Forged Police Report

On or around October 13, 2017, Mr. Baram contacted the COLP press team to inquire further about Petitioner's arrest.[19]  COLP responded that the investigation into the arrest was no longer ongoing and as such no further action would be taken.[20]  On October 15, 2017, Mr. Baram contacted COLP again, this time to ask whether they would confirm it was Petitioner that was arrested.[21]  The following day, COLP responded that, as per COLP policy, they could neither confirm nor deny any name put to them in connection with an arrest.[22]  At the same time, COLP also confirmed that the investigation was not being reviewed and would not be reopened.[23]

On October 18, 2017, Mr. Baram emailed COLP attaching a copy of what he claimed to be a police report (i.e. the Forged Police Report) that he had obtained, which named the Petitioner and, as subsequently confirmed by COLP, contained false information.[24]  Due to the fraudulent details contained in the Forged Police Report, anyone who read it would wrongly associate Petitioner with disreputable or notorious conduct.[25]  Mr. Baram requested that COLP confirm whether the Forged Police Report was authentic.[26]  On October 20, 2019—almost three weeks before Mr. Baram published his article—COLP responded that the Forged Police Report was not authentic, and clarified that the report format used in the Forged Police Report was not one used by COLP, and further, that the purported police officer who authored the report was not, in fact, an officer employed by COLP.[27]

The COLP further confirmed its findings in an internal investigation into the Forged Police Report and shared the results of that investigation with Mr. Baram in an email dated October, 23, 2017, where COLP stated it believed that the Forged Police Report was "false."[28]  On October 24,

---

[19]  Afia Decl. ¶ 15.
[20]  *Id.*
[21]  *Id.*
[22]  *Id.*.
[23]  *Id.*
[24]  Afia Decl. ¶ 16*; see also In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 1:19-mc-00503-JGK-SDA ("Second SDNY 1782 Application"), Opinion & Order, ECF 77 at 13 (stating that "the Court notes that these documents contain false details from an arrest and investigation that later was dropped").
[25]  Afia Decl. ¶ 16.
[26]  *Id.*
[27]  Afia Decl. ¶ 16 & Ex. 3.
[28]  Afia Decl. ¶ 17 & Ex. 4.

2017, COLP produced a report, which stated that it was "unlikely" that the Forged Police Report had been created within COLP or leaked by COLP to the media.[29]  Thereafter, on or around October 24, 2017, COLP confirmed to Mr. Baram and others that the report was a fake.[30]  In another email in response to Mr. Baram, dated October 31, 2017, COLP confirmed that Petitioner's case had not been reopened.[31]

On November 7, 2017, Mr. Baram contacted COLP again and inquired whether they could provide further details about the case.[32]  COLP again confirmed Petitioner's case had not been reopened and stated they had no further comment on the matter.[33]

After being contacted by various media organizations requesting comment on the Forged Police Report, on November 8, 2017, Petitioner had no choice but to release a statement in which he confirmed that in May 2017 he was detained briefly in London in connection with an alleged sexual assault, an allegation categorically denied by Petitioner.[34]  The statement also confirmed that in July 2017 he was informed that no further action would be taken against him.[35]

### E.    Mr. Baram's Publication Of Article Disseminating Forged Police Report

Notwithstanding the fact that COLP previously communicated to Mr. Baram that the Forged Police Report was false, on November 8, 2017, Mr. Baram and Fast Company nonetheless published the Baram Article.[36]  The Baram Article made reference to details contained in the Forged Police Report, including false information about the circumstances leading to the arrest.[37] The Baram Article was wrongly afforded greater credibility because it referred to the details of the Forged Police Report.[38]

---

[29]  Afia Decl. ¶ 18.

[30]  *Id.*

[31]  *Id.*

[32]  Afia Decl. ¶ 19.

[33]  *Id.*

[34]  *Id.* ¶ 20.

[35]  *Id.*

[36]  *Id.* ¶ 21 & Ex. 5.

[37]  *Id*; *see also In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 1:19-mc-00503-JGK-SDA ("Second SDNY 1782 Application"), Opinion & Order, ECF 77 at 13 (stating that "the Court notes that these documents contain false details from an arrest and investigation that later was dropped").

[38]  Afia Decl. ¶ 21.

The following day, on November 9, 2017, more publications released articles referring to the contents of the Forged Police Report. The *New York Post* published an article entitled "Billionaire ally of ex-Uber CEO busted on rape charge" which included details from the Forged Police Report.[39] *Forbes* published an article entitled "Shervin Pishevar, arrested but never charged over alleged rape, says he's a victim of 'smear campaign,'" which stated that "a copy of the police report obtained by *Forbes*, confirms the details of the arrest and the identity of the suspect."[40]

### F.   Petitioner Uncovers, And British Police Confirm, That Report Is Fake

On November 9, 2017, Hickman & Rose, English criminal counsel for Petitioner, contacted COLP to inquire whether any private information relating to Petitioner had been disclosed to the media following the arrest.[41] On November 10, 2017, COLP confirmed that no such disclosure had been made, and Hickman & Rose responded with a request for a copy of the Forged Police Report.[42] On November 13, 2017, COLP declined the request due to ongoing inquiries as to the purported commission of any criminal offences related to the Forged Police Report.[43]

In an email to COLP dated September 28, 2018, Hickman & Rose renewed their request for a copy of the Forged Police Report as well as confirmation as to the source that provided it to COLP.[44] In a response dated October 25, 2018, COLP's in-house lawyer stated that they "can confirm that there is no criminal investigation in respect of the document in question. The City of London Police is content for me to inform you that the screenshot of the document was supplied to them by Marcus Baram of Fast Company. The City of London Police is not prepared to provide a copy of the screenshot without a court order requiring disclosure."[45]

On November 1, 2018, Hickman & Rose made a Subject Access Request (similar to a Freedom of Information Act request in the U.S.) to the COLP for the Forged Police Report.[46] On April 4, 2019, Hickman & Rose subsequently made a disclosure application to the English High

---

[39] *Id.* ¶ 22.
[40] *Id.*
[41] *Id.* ¶ 23.
[42] *Id.*
[43] *Id.*
[44] *Id.* ¶ 25.
[45] *Id.* ¶ 25 & Ex 6.
[46] Afia Decl. ¶ 25; Macdonald Decl. ¶ 17.

Court seeking to compel the COLP to disclose the information that had been requested.[47]  On May 29, 2019, the English High Court ordered the COLP to comply with the request.[48]  On the same day, the COLP complied and provided a copy of the Forged Police Report to Hickman & Rose.[49]  The COLP further confirmed via a signed witness statement from Teresa La Thangue (COLP's Communications Director) that the Forged Police Report was fake:

> "2. On the 18 October 2017, Corporate Communications received ***an email from Marcus Baram, a journalist, stating that <u>he had obtained the 'arrest report'</u>*** in relation to matter that he had previously enquired about; a report of rape at the Ned Hotel on the 27 May 2017.  I now produce marked "TLT/I" a copy of the said email.
>
> 3. In his email of the 18 October 2017, Marcus Baram asked us to verify that the document attached to his email was authentic.  The attached document was a screenshot of what appeared to be an arrest report. I now produce marked "TLT/2" a copy of the attachment.
>
> 4. The 'arrest report' was sent to the City of London Police's Professional Standards Directorate who were ***<u>able to confirm that the document was not a City of London Police document</u>***.
>
> 5. Thereafter, Marcus Baram was told, along with any other journalists who enquired, ***<u>that it was a fake</u>***, explaining that it was not a document that is used by the City of London Police, and that the officer named does not work and has not worked for the City of London Police."[50]

These findings are further supported by Detective Sergeant Jonathan Witt (a COLP officer), who concluded in a report dated October 24, 2017 that the Forged Police Report was "not authentic."[51]  On June 11, 2019, the COLP provided additional documents to Petitioner, detailing the COLP's internal investigation into the Forged Police Report's authenticity as well as contact with media outlets following inquiries into the Petitioner's arrest.[52]  Whilst this information was

---

[47] Macdonald Decl. ¶ 18; Afia Decl. ¶ 25.

[48] Macdonald Decl. ¶ 18.

[49] Afia Decl. ¶ 26. Specifically, the copy was a screenshot of the purported Forged Police Report which had been sent by Mr. Baram to the COLP.

[50] Macdonald Decl. ¶ 19 & Ex. 5 (emphasis added); Afia Decl. ¶ 28.

[51] Afia Decl. ¶ 27.

[52] *Id.* ¶ 26.

helpful, it failed to assist the Petitioner in identifying the author(s) or distributor(s) of the Forged Police Report.[53]

### G.   Petitioner's Contemplated Proceedings

Petitioner has suffered considerable reputational harm as a result of the creation and dissemination of the lies contained in the Forged Police Report.   Accordingly, Petitioner contemplates initiating criminal and civil proceedings against the Forgers in the England & Wales.

***Contemplated Criminal Proceedings***.   Petitioner seeks to initiate, either through public or private prosecutions,[54] criminal proceedings in England & Wales against the Forgers for violations of the Forgery and Counterfeiting Act 1981, the Fraud Act 2006, and the Malicious Communications Act 1988 ("Contemplated Criminal Proceedings"). [55]   As explained in the Declaration of Lord Macdonald of River Glaven Kt QC—***the former Director of Public Prosecutions in England & Wales***—the Forgers have contravened the Forgery and Counterfeiting Act 1981 because in creating and maliciously disseminating the Forged Police Report—plainly a false instrument under English law—the Forgers intended by their acts to harm, and actually harmed, the Petitioner.[56]   The Forgers also contravened Sections 2, 6, and 7 of the Fraud Act 2006 under English law because the Forged Police Report was intended by the Forgers to be perceived by its readers as a genuine police report; the implied assertion that it was genuine amounted to a false representation; the Forgers knew this was a false representation; and their plain and inescapable intention in making this false representation was to cause loss to the Petitioner.[57] Similar reasoning applies equally to anyone further down the chain who passed the Forged Police Report on knowing it was a fake and intending thereby to cause loss to the Petitioner.   Similarly, the Forgers contravened the Malicious Communications Act 1988 because when the Forgers conveyed the report to others, they did so knowing it contained false information (because that information had been invented), and with full awareness that it would inevitably be drawn to the

---

[53]  Macdonald Decl. ¶ 20.
[54]  Under English law, a victim of a crime may initiate a private prosecution without police or State intervention. *See* Macdonald Decl. ¶¶ 36-38.
[55]  Macdonald Decl. ¶¶ 24-38.
[56]  Macdonald Decl. ¶¶ 27-28.
[57]  *Id.* ¶¶ 29-30.

Petitioner's attention (thus establishing the necessary intention under English law), with the equally inevitable result that the Petitioner would be caused distress and anxiety.[58]  To this end, Petitioner has retained English counsel to pursue these claims, who have already begun preparing pleadings, including criminal summonses.[59]

**_Contemplated Civil Proceedings._**  The Petitioner contemplates initiating civil proceedings against the Forgers.[60]  Specifically, Petitioner intends to bring a claim of, *inter alia*, negligent misstatement, against the Forgers on the basis that the Forgers owed Petitioner a duty of care not to publish private information about him which they knew to be false, yet did so regardless, which information the media (and possibly others) have relied on, thereby causing Petitioner to suffer loss ("Contemplated Civil Proceedings").[61]  The Petitoner also contemplates bringing libel and/or slander proceedings, as well as a claim in misuse of pivate information in respect of the dissemination of the Forged Police Report which has caused serious harm to his reputation.

To this end, the Petitioner has retained English counsel to pursue civil claims in England & Wales, including (without limitation) negligent misstatement, libel, and/or slander, as well a s for misuse of private information.[62]  English counsel has begun preparing pleadings to pursue these claims.[63]  While these claims may initially be brought against Persons Unknown (akin to John Doe defendants in the US), in order to pursue the claims a named defendant is required and it would be more efficient from the outset to initiate these proceedings against such a named defendant(s).[64]

## H.   Prior Section 1782 Applications

As part of his investigation to identify the Forgers, the Petitioner initiated three Section 1782 actions, two in New York and one in California.

---

[58] *Id.* ¶¶ 32-33.
[59] *Id.* ¶ 24.
[60] Afia Decl. ¶ 33.
[61] *Id.* ¶¶ 33-45.
[62] *Id.* ¶¶ 33-34, 46-48.
[63] *Id.*
[64] *Id.* ¶¶ 35, 50.  A Persons Unknown lawsuit would need to be amended within months to add the names of the defendant(s).  Thus, and since it is unclear how this Application will unfold, it would be more efficient and judicially economical to file the foreign civil lawsuit onces those name(s) are identified.

On August 6, 2019, the Petitioner petitioned the U.S. District Court for the Southern District of New York for an order authorizing Petitioner to conduct discovery from Fast Company relating to the Baram Article , including the identity of the Mr. Baram's source ("First SDNY 1782 Application").  On August 9, 2019, the Magistrate Judge Stewart D. Aaron granted the First Section 1782 Application.  The Petitioner subsequently served subpoenas on Fast Company and Mansueto Ventures LLC (Fast Company's publisher).  On August 27, 2019, Fast Company/Mansueto requested a two-week extension to produce responsive documents pursuant to the subpoenas.[65]  Petitioner consented to this request.[66]

Between September 17, 2019 and October 21, 2019, Fast Company/Mansueto produced certain information about the Forged Police Report[67] but Mr. Baram (through Fast Company) refused to produce identifying information about the identity of his source i.e. the Respondent, on the basis that Mr. Baram was purportedly permitted to withold that information under the "reporter's privilege."[68]

On October 31, 2019, Petitioner therefore filed in SDNY a Section 1782 application against Mr. Baram to obtain identifying information sufficient to identify the Respondent ("Second SDNY 1782 Application").[69]  On February 18, 2020, Magistrate Judge Stewart Aaron denied Petitioner's application, finding that although he had met the mandatory criteria of Section 1782, the court held that Mr. Baram could invoke the reporter's privilege to withold the name of his source.[70]

On March 3, 2020, Petitioner filed a motion for reconsideration, and on April 14, 2020, the court granted the motion for reconsideration but adhered to its prior decision because Petitioner had "failed to make a clear and specific showing that the identity of the [Respondent] is not

---

[65]  Bento Decl. Ex. 11.

[66]  *Id.*

[67]  The information produced by Fast Company confirmed that Mr. Baram was told by the City of London Police that the Forged Police Report was not authentic, that the purported police officer on the report does not work for the police, and that in any event the forged report did not look like the type of report the City of London Police would use.  *See, e.g.*, Afia Decl., Ex. 3.  For reasons that are unknown to Petitioner, Mr. Baram nevertheless proceeded to publish his story making reference to the Forged Police Report, including to the fake report's content.  *See id.* Ex. 5.

[68]  Bento Decl. Exs. 5, 7.

[69]  To be clear, Petitioner does not seek information already produced by Fast Company, Mansueto, or Mr. Baram pursuant to the First Section 1782 Application.

[70]  *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301-07 (S.D.N.Y. 2020).

obtainable from other available sources," noting that "Petitioner ha[d] tools available to him to obtain discovery" from three other potential sources.[71]  On September 8, 2020, Petitioner filed a motion to supplement, amend and/or renew his application, which included sworn affidavits from those three potential sources stating in substance that none of these individuals has any knowledge regarding the Respondent or of the provenance of the Forged Police Report.[72]

On October 3, 2020, the court granted Petitioner's renewed application in the Second SDNY 1782 Application and found that Petitioner had "exhausted reasonable alternative sources of information" and found that "the reporter's privilege has been overcome."[73]  Accordingly, the court ordered Mr. Baram to disclose to Petitioner the name and location of the Respondent.[74]

On October 19, 2020, Mr. Baram filed objections against the court's October 3, 2020 order.[75]  On November 2, 2020, Petitioner filed his opposition to Mr. Baram's objections. [76]  On January 21, 2021, the court scheduled oral argument for February 12, 2021 ("SDNY Hearing").[77]  On February 2, 2021, Mr. Baram, with Petitioner's consent, moved to adjourn the SDNY Hearing to February 19, 2021. [78]  Upon receiving new information from the Investigator about the Respondent's identity, Petitioner, with Mr. Baram's consent, on February 9, 2021, moved to adjourn the SDNY Hearing pending investigation into this new information.[79]

On February 23, 2021, Petitioner filed a Section 1782 application in the U.S. District Court for the Central District of California ("C.D. Cal.") seeking documentary and testimonial evidence from the Investigator about the identity of the Respondent ("C.D. Cal. 1782 Action").  On May 25, 2021, C.D. Cal. granted Petitioner's application and authorized service of the subpoenas on

---

[71]  *In re Pishevar*, 1:19-MC-00503 (JGK), 2020 WL 1862586, at *4-5 (S.D.N.Y. Apr. 14, 2020) (citation omitted).
[72]  *Second SDNY 1782 Application*, ECF 86-92.
[73]  *In re Pishevar*, 1:19-MC-00503 (JGK), 2020 WL 8299764, at *5 (S.D.N.Y. Oct. 3, 2020).
[74]  *Id.*
[75]  *Second SDNY 1782 Application*, ECF 100.
[76]  *Second SDNY 1782 Application*, ECF 101.
[77]  *Second SDNY 1782 Application*, Minute Entry dated January 21, 2021.
[78]  *Second SDNY 1782 Application*, ECF 102.
[79]  *Second SDNY 1782 Application*, ECF 104.

the Investigator.[80]   On June 18, 2021, the Investigator provided information identifying the Respondent as Mr. Baram's source.[81]

Having obtained information about the Respondent's identity, on June 30, 2021 Petitioner dismissed with prejudice the SDNY Action seeking information from Mr. Baram.[82]   On August 6, 2021, Petitioner initiated the present Section 1782 action to obtain information to identify the UK Source and the entity/individual who retained Respondent's services in connection with the Petitioner.[83]

## I.   Respondent Possesses Highly Material Information Concerning The UK Source and Forgers

Pursuant to the subpoenas served in the C.D. Cal. 1782 Action, the Investigator identified the Respondent as Mr. Baram's source.[84]   The Respondent is therefore highly likely in possession, custody, and control of the Identifying Information i.e. information about the identities of the UK Source and others involved in the creation and malicious distribution of the forged report, which is highly material to the Contemplated English Proceedings.   This Identifying Information, *inter alia*, relates to the identity and location of the UK Source, who gave the Respondent the Forged Police Report and Other False Information; the identity and location of Respondent's client, who arguably retained Respondent's services in connection with the Forged Police Report and Other False Information; and any other information relating to the provenance and falsity of the report, including anyone who may have commissioned or had any involvement in planning, preparing, or maliciously disseminating the Forged Police Report and Other False Information—facts and issues that are critical and indispensable to the Contemplated English Proceedings.[85]

---

[80]   Order to Issue Subpoenas to Respondent Authorizing Discovery Pursuant to 28 U.S. §1782 to Conduct Discovery for Use in Foreign Proceedings, *In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, 2:21-mc-00175-JAK-KS (C.D. Cal May 25, 2021), ECF No. 21.
[81]   See Bento Decl., Ex. 12.
[82]   *Second SDNY 1782 Application*, ECF 126.
[83]   Bento Decl., Ex. 2 (subpoenas).
[84]   Bento Decl., Ex. 12.
[85]   Macdonald Decl.¶¶ 40-41; Afia Decl.¶¶ 46-50.

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts

to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal . . . .  The order may be made
> . . . upon the application of any interested person.

28 U.S.C. § 1782.

Courts are permitted to grant Section 1782 applications on an *ex parte* basis.  *In re Masters*

*for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,

315 F. Supp. 3d 269, 272 (D.D.C. 2018) ("[D]istrict courts are generally authorized to review a §

1782 application on an *ex parte* basis."); *see also In re Rivada Networks*, 230 F. Supp. 3d 467, 473

(E.D. Va. 2017) (concluding that "decision to file an ex parte § 1782 application was proper . . .

as § 1782 applications are routinely filed ex parte"); *Gushlak v. Gushlak*, 486 F. App'x 215, 217

(2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications

made pursuant to § 1782 *ex parte*."); *In re Société d'Etude de Réalisation et d'Exploitation Pour*

*le Traitement du Mais*, No. 13-MC-0266, 2013 WL 6164435, at *2 n.1 (E.D. Pa. Nov. 22, 2013)

(collecting cases).  "[A]s a general matter, *ex parte* review is 'justified by the fact that the parties

[from whom discovery is sought] will be given adequate notice of any discovery taken pursuant to

the request and will then have the opportunity to move to quash the discovery or to participate in

it.'"  *In re Masters*, 315 F. Supp. 3d at 272 (quoting *In re Letter of Request from Supreme Court*

*of H.K.*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991)).[86]

---

[86]   Petitioner has also commneced this Application on an *ex parte* basis because of the nature of the information
sought, the nature of the foreign claims (including criminal claims), and to maximize the preservation of
indispensable evidence.

An application made pursuant to Section 1782 must satisfy three statutory requirements: (1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person.  *See In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018); *In re Nat'l Syndicate for Elec. Energy*, No. 1:13-MC-20 GBL/TCB, 2014 WL 130973, at *2 (E.D. Va. Jan. 14, 2014).

After determining that the three statutory requirements are satisfied, courts may then consider four discretionary factors in deciding whether to grant a Section 1782 application, namely:  (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the subpoenas contain unduly intrusive or burdensome requests.  *See Intel*, 542 U.S. at 264–65.  The Supreme Court neither mandated that lower courts weigh those factors, nor "articulate[d] a formula for their consideration."  *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 17-1466 (BAH), 2017 WL 3708028, at *3 (D.D.C. Aug. 18, 2017); *see also HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 222 (D.D.C. 2015).

Moreover, the Court should consider these discretionary factors in light of the "statute's twin aims: i.e., to provide fair and efficient assistance to participants in international litigation and to encourage other countries to provide similar assistance."  *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (also noting the "statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application") (quoting *In re*

15

*Application of Euromepa S.A.,* 51 F.3d 1095, 1097 (2d Cir.1995)); *Intel,* 542 U.S. at 252.  The Supreme Court and courts in our circuit, as well as other circuits, have acknowledged a congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings.  *See, e.g., Intel,* 542 U.S. at 247–48; *Al Fayed v. C.I.A.*, 229 F.3d 272, 276 (D.C. Cir. 2000) (acknowledging that "successive amendments, since the statute's origin in 1855, have given [Section 1782] 'increasingly broad applicability.'" (citing *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996))); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability." (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993))).

### A.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.

Petitioner satisfies the three statutory requirements of section 1782:  (1) Respondent is "found" in the District of Columbia; (2) the requested information is for use in the Contemplated English Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff and complainant in those foreign proceedings.[87]

### 1.    Respondent Is "Found" In The District of Columbia.

Respondent resides and is found in this district as it is headquartered in this District.[88]  *See Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *In re Masters*, 315 F. Supp. 3d at 274 (Courts "appear to agree that a corporation is "found" in a district where it is headquartered or incorporated."); *In re DiGiulian*, 1:19-MC-132 (RC/RMM), 2020 WL 5253849, at *3 (D.D.C. Sept. 3, 2020) (holding respondent corporation is "found" in Washington,

---

[87]    *See In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782,* 439 F. Supp. 3d 290, 302 (S.D.N.Y. 2020) (holding that Petitioner satisfied Section 1782's statutory requirements).

[88]    Bento Decl., Exs. 3-4, 13.

D.C. because its corporate headquarters is in Washington, D.C.); *Matter of de Leon*, 19-MC-0197 (TSC), 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020) (holding that a respondent "resides" in this district because its headquarters are located in Washington, D.C.).   Accordingly, Respondent resides and is "found" in this District for purposes of Section 1782.

**2.      The Discovery Sought Is For Use In Foreign Proceedings.**

The information sought in the Subpoena is "for use" in foreing proceedings.  Section 1782 does not require the foreign proceedings to be "pending" or "imminent," and permits courts to authorize discovery provided that the foreign proceedings are "within reasonable contemplation" when the request for judicial assistance is filed.  *In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018); *Intel*, 542 U.S. at 258–59 (also noting by parenthetical, "[i]t is not necessary ... for the [adjudicative] proceeding to be pending at the time the evidence is sought, and that the statute requires only that the evidence is eventually to be used in such a proceeding").  The D.C. Circuit has further confirmed that the second mandatory factor merely asks whether there is "sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially."  *In re Letter of Request from the Crown Prosecution Serv.*, 870 F.2d 686, 692 (D.C. Cir. 1989).

Petitioner's Contemplated English Proceedings qualify as "foreign proceedings" for purposes of Section 1782.  *See In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 302 (S.D.N.Y. 2020) ("The Court finds that [Mr. Pishevar] has established the required concrete basis for the contemplated civil proceedings . . . [Mr. Pishevar] also has met the "for use" standard with respect to the contemplated criminal proceedings.); *see also* Order to Issue Subpoenas to Respondent Authorizing Discovery Pursuant to 28 U.S. §1782 to Conduct Discovery for Use in Foreign Proceedings, *In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in*

17

*Foreign Proceedings Pursuant to 28 U.S.C. 1782*, 2:21-mc-00175-JAK-KS (C.D. Cal May 25, 2021), ECF No. 21 (finding that Mr. Pishevar's 1782 application satisfied the statutory requirements of 28 U.S.C. § 1782).  Here, the declarations of Petitioner's English lawyers that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings is objective evidence that Petitioner's "foreign proceeding" is "within reasonable contemplation."  *In re DiGiulian*, 314 F. Supp. 3d at 6 ("Section 1782 does not require proceedings to be 'pending' or 'imminent,' and permits courts to authorize discovery provided that the foreign proceedings are 'within reasonable contemplation' when the request for judicial assistance is filed") (internal citation omitted); *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018) (summary order) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was been met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re: Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was for use in a contemplated proceeding because, inter alia, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

The Contemplated English Proceedings qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782.  Indeed, numerous courts have found that

civil proceedings before English courts satisfy Section 1782.  *See e.g. In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  With regard to the Contemplated Criminal Proceedings in particular, Section 1782(a) explicitly provides that the statute can be used to obtain discovery for use in "criminal investigations conducted before formal accusation", and courts have confirmed the availability of Section 1782 for such criminal investigations.  28 U.S.C. § 1782(a); *see e*.g., *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (granting 1782 application for use in contemplated criminal proceedings abroad); *In re Veiga*, 746 F. Supp. 2d 8, 22 (D.D.C. 2010) (granting 1782 application for use in criminal proceeding).  Thus, the Contemplated English Proceedings plainly qualify as foreign proceedings under Section 1782.

Petitioner is not required to show that the information sought would be discoverable or admissible in the Contemplated English Proceedings.  *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *In re Svitavy*, 748 F. Supp. 2d at 527 ("To delve into the merits of litigation pending before a foreign tribunal would be a breach of international comity.  Indeed, the Supreme Court has instructed that the district courts are to refrain from delving into the similarly technical question of discoverability under foreign laws in considering a § 1782 request for judicial assistance."); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[S]ection 1782 does not require that the material sought in the United States be discoverable—or even admissible—in the foreign tribunals.").  Rather, the burden on Petitioner is "*de minimis*"; Petitioner need only show that the evidence is relevant to the Contemplated English Proceedings.  *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (granting application where petitioners made "*prima facie* showing and its conclusion that the discovery sought in fact relates to claims and defenses").

Here, Petitioner plainly satisfies this requirement.   The information sought in the Subpoenas relate to the identity and location of the Forgers (including the UK Source); the identiy and location of anyone who instructed the Respondent to investigate the Petitioner in relation to this matter; and any other information relating to the provenance and falsity of the report, including anyone who may have commissioned or had any involvement in planning, preparing, or disseminating the Forged Police Report and Other False Information—facts and issues that are critical to the Contemplated English Proceedings.   The Petitioner will use this information to plead and prove his civil and criminal claims in England.[89]

### 3.   Petitioner Is An "Interested Person."

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings.   While Section 1782 broadly covers those with the right to participate and submit information in foreign proceedings, *see Lazaridis v. Intl. Ctr. for Missing and Exploited Children, Inc.,* 760 F. Supp. 2d 109, 113 (D.D.C. 2011), *aff'd sub nom. In re Application for an Or. Pursuant to 28 U.S.C. §1782*, 473 Fed. Appx. 2 (D.C. Cir. 2012)(unpublished)), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s] who may invoke § 1782." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004); *Attorney Gen. of British Virgin Islands v. Hyman*, No. 1:19-MC-164-RCL, 2020 WL 2615519, at *6 (D.D.C. May 23, 2020) (holding that 1782 applicant who "intends to initiate [foreign] proceedings" qualifies as "interested person"); Petitioner will be a party and complainant to the Contemplated English Proceedings and is therefore an "interested person" under Section 1782; *see In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) ("[Mr. Pishevar] will be the plaintiff in the contemplated civil lawsuit

---

[89]   Afia Decl. ¶¶46-50; Macdonald Decl. ¶¶40-41.

and, as such, is an "interested person . . . [Mr. Pishevar]  also is an "interested person" with regard to the contemplated criminal proceedings."); *see also* Order to Issue Subpoenas, *In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, 2:21-mc-00175-JAK-KS (C.D. Cal May 25, 2021), ECF No. 21 (finding that Mr. Pishevar's 1782 application satisfied the statutory requirements of 28 U.S.C. § 1782).[90]

## B.     All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks.

Once the threshold requirements under section 1782 are met, the Court should consider the four discretionary "*Intel* factors."  Each of these factors weighs in  favor of granting the requested discovery here.

*First*, Respondent will not be a party to the Contemplated English Proceedings.[91]  *Second*, there is no reason to believe that English courts would be unreceptive to evidence obtained through Section 1782 discovery.  *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence.  *Fourth*, Petitioner's three document requests and corresponding deposition topics are carefully circumscribed and targeted to key facts so as to avoid undue burden on Respondent.

### 1.     The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding  . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is

---

[90]   With regard to the Contemplated Criminal Proceedings, if a public prosecution is elected, Petitioner qualifies as an "interested person" as a victim and aggrieved party of the crime.  *See e.g. Lazaridis v. Intl. Ctr. for Missing and Exploited Children, Inc.,* 760 F. Supp. 2d at 113 ("interested person" includes complainant who prompts a foreign investigation and who "possesses a reasonable interest in obtaining [judicial] assistance"); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) ("[A] complainant in a criminal investigation satisfies the "interested person" requirement of § 1782."); *In re Ex Parte Application of SERETM*, 2013 WL 6141655, at *1 (N.D. Cal. Nov. 21, 2013) (holding that a victim of fraud is an interested person under Section 1782).  Indeed, Petitioner will have the practical ability to introduce evidence concerning the identity of the Forger regardless of which type of prosecution (private or public) is initiated.  Macdonald Decl. ¶¶35-41.

[91]   Macdonald Decl., n. 14; Afia Decl., n. 8.

when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, the Respondent will not be a party to the Contemplated English Proceedings.[92] Further, there is presently no other avenue for Petitioner to uncover the identity of the Forger or the distributors of the Forged Police Report.[93]

### 2.   The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. *See In re Application of Caratube In'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"); *In re Veiga*, 746 F. Supp. 2d at, 23–24 (same); *In re DiGiulian*, 314 F. Supp. 3d at 8 (same). There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with a sister circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, should generally prompt district courts to provide some form of discovery assistance." *In re Application of Euromepa*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106 (quoting *In re Application of Euromepa*, 51 F.3d at 1100).

The English courts will be receptive to evidence obtained through this Application.[94] Petitioner will have the opportunity to use the information obtained in this Application in pleading

---

[92]   Macdonald Decl., n. 14; Afia Decl., n. 8.
[93]   Afia Decl. ¶50; Macdonald Decl. ¶¶40-41.
[94]   Afia Decl. ¶¶51-54; Macdonald Decl. ¶¶42-47. At minimum, there is no authoritative proof that the English courts would reject the evidence obtained here.

his claims (i,e, in the complaint/claim form, and criminal complaint and/or criminal summons) as well as to prove its claims and enforce any remedies and/or sanctions.[95]

### 3.       The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and courts in this district have recognized that "courts should generally refrain" from determining whether "evidence would actually, or even probably, be admissible in the foreign proceeding" and should "leave it to the foreign tribunal to decide what use it wants to make of the evidence obtained."  *See In re Veiga*, 746 F. Supp. 2d 8, 17–18 (D.D.C. 2010); *In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d at 12 ("[A]s the Court has already explained, section 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings."); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding.  As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first.  *See In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d at 13 ("[T]here is no requirement in the statute that a petitioner exhaust their discovery options in a foreign forum before seeking discovery here."); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79

---

[95]   Afia Decl. ¶¶47-50; Macdonald Decl. ¶¶40-41.

(2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy.  Petitioner does not seek customer account information, state secrets, or attorney-client communications—he merely seeks information relating to the individual(s) who forged a police report with the goal of disseminating false information to harm Petitioner's reputation.  The English jurisdiction does not have any law or public policy against such discovery. To the contrary, as the Declaration of Lord Macdonald of River Glaven Kt QC notes, it would be in the public interest to prosecute the Forger(s) of such a document.[96]

### 4.    The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  "[T]he standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)."  *In re Veiga*, 746 F. Supp. 2d at 19 (citing *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998)).  Relevancy in this context is "broadly construed" and "[w]hen relevance is in doubt, the district court should be permissive."  *Id*.

Here, the *three document* requests and the corresponding deposition topics are narrowly tailored, temporally limited, and directly relevant to the issues in the foreign proceedings. Whatever burden Respondent may incur by producing the requested discovery, it is both modest and proportionate given the circumstances.  In any event, it is unclear what burden Respondent would avoid by witholding the identity of an individual(s) that has engaged in intentional criminal and fraudulent conduct designed to perpetuate lies about the Petitioner.

---

[96]   Macdonald Decl. ¶¶36, 47.

## III.     CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the *Ex Parte* Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas; and (d) grant any and all other relief to Petitioner as is deemed just and proper.

Dated:  Washington, D.C.    Respectfully submitted,
   August 6, 2021

            */s/ Valerie J. Ramos*

            Valerie J. Ramos (D.C. Bar No. 241050)
            QUINN EMANUEL URQUHART &
            SULLIVAN, LLP
            1300 I Street, NW Suite 900
            Washington, D.C. 20005
            Telephone: (202) 538-8000
            Fax: (202) 538-8100
            valerieramos@quinnemanuel.com

            Lucas V.M. Bento (*pro hac vice forthcoming*)
            QUINN EMANUEL URQUHART &
            SULLIVAN, LLP
            51 Madison Ave., Floor 22
            New York, NY 10010
            Telephone: (212) 849-7000
            Facsimile: (212) 849-7100
            lucasbento@quinnemanuel.com

            *Attorneys for Petitioner Shervin Pishevar*