# Exhibit 12

24

Lord Mackay
of Clashfern                    Reg. v. Shivpuri (H.L.(E.))                    [1987]

with the Lord Chancellor's view. Otherwise I agree with the reasons   A
given by my noble and learned friend, Lord Bridge.

*Appeal against conviction dismissed.*
*Costs of appellant and respondent to*
*be paid out of central funds.*

*Solicitors: Francis & Co., Cambridge; Solicitor, Customs and Excise.*   B

C. T. B.

—————

C

[HOUSE OF LORDS]

SOUTH CAROLINA INSURANCE CO.    .    .    . RESPONDENTS

AND                                                              D

ASSURANTIE MAATSCHAPPIJ "DE ZEVEN
      PROVINCIEN" N.V.    .    .    .    .    . APPELLANTS

SOUTH CAROLINA INSURANCE CO.    .    . RESPONDENTS

AND

AL AHLIA INSURANCE CO. AND ANOTHER    .    . APPELLANTS   E

1986  May 6, 7;          Lord Bridge of Harwich, Lord Brandon of Oakbrook,
      July 29                  Lord Brightman, Lord Mackay of Clashfern and
                                                          Lord Goff of Chieveley

*Injunction—Jurisdiction to grant—Foreign proceedings—Action*   F
      *brought in England—Defendants lodging petition in United States*
      *court for pre-trial discovery—Whether defendants to be restrained*
      *from proceeding with petition under court's inherent jurisdiction*

      The plaintiffs were an American insurance company, and,
having reinsured the liability of another American insurance
company, U.N.I., they reinsured the risk with the defendants in
London. The plaintiffs claimed under the contract of reinsurance
and, when the defendants disputed liability, they brought   G
proceedings in the Commercial Court. Before the defence was
served, the defendants lodged a petition in a United States
district court seeking, inter alia, an order for pre-trial discovery
of documents relevant to the claim and the plaintiffs' contract of
reinsurance with U.N.I., against persons resident in the United
States, who were not parties to the English action. On the
plaintiffs' application in the Commercial Court, the judge made   H
an order restraining the defendants from taking any further step
in the American proceedings or enforcing any order made
therein. On appeal by the defendants, the Court of Appeal
dismissed the appeal.

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))

A

On appeal by the defendants:—

*Held,* allowing the appeal, that although the power of the
High Court to grant injunctions, which was a statutory power
conferred by section 37(1) of the Supreme Court Act 1981, was
very wide it was limited, save for two exceptions irrelevant to
the present proceedings, to the situations (Lord Mackay of
Clashfern and Lord Goff of Chieveley dubitante) (i) where one
party to an action could show that the other party had either

B

invaded, or threatened to invade, a legal or equitable right of
the former for the enforcement of which the latter was amenable
to the jurisdiction of the court, and (ii) where one party to an
action had behaved, or threatened to behave, in an unconscion-
able manner; that in the circumstances the plaintiffs had failed
to show either that the defendants' conduct towards the plaintiffs
was amenable to the jurisdiction of the court, or that it was
unconscionable in the sense that it interfered with the due

C

process of the High Court's jurisdiction, and that, accordingly,
the injunctions granted would be discharged (post, pp. 31c–D,
39H—40D, 41A–D, 44A–B, C–D, E, F).

*Siskina (Owners of cargo lately laden on board) v. Distos
Compania Naviera S.A.* [1979] A.C. 210, H.L.(E.); *Castanho v.
Brown & Root (U.K.) Ltd.* [1981] A.C. 557, H.L.(E.) and
*British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58,

D

H.L.(E.) applied.

*Per* Lord Goff of Chieveley. I am reluctant to accept the
proposition that the power of the court to grant injunctions is
restricted to certain exclusive categories. That power is unfettered
by statute and it is impossible at the present time to foresee
every circumstance in which it may be thought right to make
the remedy available (post, p. 44G).

E

Decision of the Court of Appeal [1986] Q.B. 348; [1985] 3
W.L.R. 739; [1985] 2 All E.R. 1046 reversed.

The following cases are referred to in their Lordships' opinions:

*Bank of Tokyo Ltd. v. Karoon (Note),* post, p. 45; [1986] 3 W.L.R. 414;
[1986] 3 All E.R. 468, C.A.
*British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58; [1984] 3

F

W.L.R. 413; [1984] 3 All E.R. 39, H.L.(E.)
*Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557; [1980] 3 W.L.R.
991; [1981] 1 All E.R. 143, H.L.(E.)
*Court of Commissioner of Patents for Republic of South Africa, In re* (1980)
88 F.R.D. 75
*Deere (John) Ltd. and Deere & Co. v. Sperry Corporation* (1985) 754 F. 2d
132
*MacShannon v. Rockware Glass Ltd.* [1978] A.C. 795; [1978] 2 W.L.R. 362;

G

[1978] 1 All E.R. 625, H.L.(E.)
*Siskina (Owners of cargo lately laden on board) v. Distos Compania Naviera
S.A.* [1979] A.C. 210; [1977] 3 W.L.R. 818; [1977] 3 All E.R. 803,
H.L.(E.)

The following additional cases were cited in argument:

H

*Armstrong v. Armstrong* [1892] P. 98
*Erhmann v. Ehrmann* [1896] 2 Ch. 611, C.A.
*Mike Trading and Transport Ltd. v. R. Pagnan & Fratelli (The Lisboa)*
[1980] 2 Lloyd's Rep. 546, C.A.
*North Carolina Estate Co. Ltd., In re* (1889) 5 T.L.R. 328

South Carolina Co. v. Assurantie N.V. (H.L.(E.))                    [1987]

*Straker Brothers & Co. v. Reynolds* (1889) 22 Q.B.D. 262       A
*Westinghouse Electric Corporation Uranium Contract Litigation M.D.L.*
*Docket No. 235 (Nos. 1 and 2), In re* [1978] A.C. 547; [1978] 2 W.L.R.
81; [1978] 1 All E.R. 434, H.L.(E.)

APPEAL from the Court of Appeal.
This was an appeal by leave of the House of Lords (Lord Scarman,
Lord Templeman and Lord Mackay of Clashfern) dated 19 November       B
1985 by the defendants, Assurantie Maatschappij "De Zeven Provincien"
N.V., in the first action, and by the first defendants, Al Ahlia Insurance
Co., and by the second defendants, Arabian Seas Insurance Co. Ltd., in
the second action brought by the plaintiffs, South Carolina Insurance
Co. from the judgment dated 23 May 1985 of the Court of Appeal
(Griffiths, Slade and Lloyd L.JJ.) which affirmed orders made on 25       C
April 1985 by Hobhouse J., the effect of which was to restrain the
defendants from taking any further steps in proceedings before a Federal
District Court of the United States for production and inspection of
documents against a number of companies and individuals not party to
the present actions.
The facts are set out in the opinion of Lord Brandon of Oakbrook.
                                                                          D

*Robert Alexander Q.C.* and *Jonathan Sumption Q.C.* for the
defendants. The point raised by this appeal is novel. The question can
be stated in this way: in what circumstances (if any) may the English
courts restrain a party to an English action from availing himself of the
process of a foreign court for the purpose of obtaining evidence relevant
to the English action? The most authoritative decisions in this branch of       E
the law are those of this House in *Siskina (Owners of cargo lately laden
on board) v. Distos Compania Naviera S.A.* [1979] A.C. 210; *Castanho
v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557 and *British Airways
Board v. Laker Airways Ltd.* [1985] A.C. 58.
In the present case the defendants against whom injunctive relief is
sought availed themselves of a right open to them under the federal law       F
of the United States and applied to a United States district court for an
order requiring persons resident in the United States, but who were not
parties to the English proceedings, to give pre-trial discovery of
documents relevant to the English action. The particular issue, therefore,
in this appeal is whether in the present circumstances it is right for the
English court to restrain the defendants from prosecuting further the
proceedings in the United States district court.       G
The rules of procedure in England provide a means whereby
discovery can be obtained between parties to an action and witnesses
can be subpoenaed to appear at the trial with relevant documents in
their possession. The rules of procedure do not provide an exhaustive or
exclusive code which prohibit a party from obtaining documents in any
way other than those provided by the rules. For example, if a stranger
to the action is prepared to give documents voluntarily to a party, that       H
party is entitled to receive them without obtaining a subpoena. Further,
a party may use the facilities of the courts of a friendly foreign state if
that state is willing for them so to do. The defendants concede that

A    there are limits to this principle. Thus, it is inapplicable where it would be unconscionable for a party to obtain discovery, for example, of documents which in this country are subject to professional privilege.

The documents sought are relevant to the defences pleaded in the action which in turn reflect enquiries which were pursued before the action was brought. The plaintiffs obtained the injunction in spite of refusing the defendants consent to have access to the documents in

B    question. Since then they have granted the defendants access but it is the view of the defendants' solicitors that the strangers to the action have not made proper disclosure. The documents are not in the power or possession or control of the plaintiffs; therefore it is difficult to see why they object to disclosure. If the strangers to the action were in this country they could be required to produce the documents by subpoena

C    duces tecum. As to any suggestion that the defendants could have applied for letters rogatory under R.S.C., Ord. 39, r. 2, the procedure is cumbersome and expensive and they can be issued only where other efforts have been made to obtain the documents in question.

As stated previously, after the Court of Appeal gave judgment the plaintiffs did arrange for the defendants to have controlled access to certain documents in the possession of certain third parties resident in

D    the United States. This was a facility which the defendants hoped would make the prosecution of the present appeal unnecessary. However, the restrictions imposed upon the defendants' inspection of documents made the facilities which were offered to them most unsatisfactory. They have therefore with regret concluded that certain documents have been withheld in a manner which can be remedied only by the compulsory

E    procedure of the United States district court.

28 United States Code, section 1782, is a clear provision enabling parties to an English action to obtain from the courts of the United States documents for use in proceedings in this country. That being the rule, the question then arises: on what principle should the English court prevent disclosure where the United States courts would allow disclosure directed to a company which is subject to the jurisdiction of the United

F    States courts? It is the plaintiffs' contention that in the circumstances it is unconscionable for the defendants to apply for disclosure of these documents. The Court of Appeal held that in principle a party to litigation in this country should not avail itself of 28 United States Code, section 1782, against non-parties resident in the United States.

Reliance is placed on the following propositions: (i) In principle it is

G    open to the defendants to seek material to enable them to conduct their case and to obtain that material as early as possible. A party can gather evidence for use in litigation either through the use of English procedures or through other means. (ii) There is no objection to these other means including means provided by United States proceedings. This does not, as the Court of Appeal suggested, deprive the English court of control over the proceedings. (iii) Caution is required before the conduct of any

H    foreign proceedings is restrained. (iv) The use of the United States processes could be restrained by injunction if it involved the breach of some legal or equitable right of the party claiming the injunction or was unjust or unconscionable to that other party but not otherwise. The

South Carolina Co. v. Assurantie N.V. (H.L.(E.))          [1987]

defendants dissent from the general approach of the Court of Appeal in    A
the present case.

As to the authorities, reliance is placed on *Siskina (Owners of cargo
lately laden on board) v. Distos Compania Naviera S.A.* [1979] A.C.
210, 211c–D, 255F–G, 256E–257, *per* Lord Diplock. As to *Castanho v.
Brown & Root (U.K.) Ltd.* [1981] A.C. 557, see *per* Lord Scarman, at
pp. 572F–G, and 574D. It is to be noted that that was a forum conveniens
case. In *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58,    B
the observations of Lord Diplock at pp. 80A–B et seq., and Lord
Scarman at p. 95C, show that the category of cases there under discussion
have no relevance to the issue in the present case. The defendants
would apply by analogy to the present case the observations of Dunn
L.J. in *Mike Trading and Transport Ltd. v. R. Pagnan & Fratelli (The
Lisboa)* [1980] 2 Lloyd's Rep. 546, 551.                                  C

On the facts of the present case it is not unreasonable or unjust for
the defendants to apply for the documents in question. It is said that the
documents would be obtained earlier than if they were obtained by
subpoena in the English proceedings. But this is only a quirk of English
procedure. The advantage of being able to obtain the documents at an
earlier stage of the proceedings is in no way unconscionable to the
plaintiffs. This is particularly so since otherwise they are not likely to be   D
obtained at all. The defendants do not accept that the procedure by way
of letters rogatory is open to them. Further, it is an expensive procedure.
It cannot be unjust or unconscionable for the defendants to take the
"direct route" for obtaining these documents.

As to the United States authorities cited by Griffiths L.J. [1986]
Q.B. 348, 357, those authorities are not contemplating the situation    E
which has arisen in the present case. The principles laid down by the
Court of Appeal here it may be said to act unconscionably against the
defendants rather than the plaintiffs. [Reference was also made to *In re
North Carolina Estate Co. Ltd.* (1889) 5 T.L.R. 328; *Straker Brothers &
Co. v. Reynolds* (1889) 22 Q.B.D. 262, and *Bank of Tokyo Ltd. v.
Karoon (Note)* [1987] A.C. 45.]

*Kenneth Rokison Q.C., Christopher Symons* and *Thomas Weitzman*   F
for the plaintiffs. Attention is drawn to the width of the inquiry
requested by the defendants in the United States proceedings. They are
seeking third party discovery which would not be allowed at all in
England. The United States court will not allow that which would not be
allowed by the court hearing the substantive issue between the parties.
The defendants are in effect seeking to take part of the English    G
proceedings out of the jurisdiction and control of the English court. The
difference between the disclosure of documents as a result of letters
of request and the present case is that the defendants here have first gone
to the foreign court and requested that court to make an order in
English proceedings.

*In re Westinghouse Electric Corporation Uranium Contract Litigation
M.D.L. Docket No. 235 (Nos. 1 and 2)* [1978] A.C. 547, is the antithesis   H
of the present case. The House there held that an English court will not,
even when so requested by a foreign court, make an order in respect of
an English person or company requiring that person or company to give

1 A.C.         South Carolina Co. v. Assurantie N.V. (H.L.(E.))

A   documentary or testamentary discovery for the purposes of the foreign
    proceedings. The present case is the reverse position since although the
    American court is being asked to assist the English court, the American
    court is being asked to admit a wider class of documents than is
    allowable under English procedure. It is thus an even stronger case than
    the *Westinghouse* case. The correct way for the defendants to proceed in
    the present issue is under R.S.C., Ord. 39, r. 1. Further, Ord. 38, r. 9
B   specifically relates to depositions in any cause or matter and links them
    to those under Ord. 39, r. 1.

       The approach of Griffiths L.J. in the Court of Appeal is adopted.
    The plaintiffs are prejudiced by the American procedure because the
    defendants can obtain documents which could not be obtained under
    English procedure. Further, the plaintiffs are necessarily prejudiced by
C   the costs and expense of the American proceedings for they are bound
    to take part in those proceedings to protect their interests. The question
    also arises whether, if the English court would not make an order for
    third party discovery as sought by the defendants, the American court
    would make any order at all. It is plain from the American decisions in
    *In re Court of Commissioner of Patents for Republic of South Africa*
    (1980) 88 F.R.D. 75, 77, and *John Deere Ltd. and Deere & Co. v.*
D   *Sperry Corporation* (1985) 754 F. 2d 132, 135, 136, that a United States
    court will only grant an applicant an order under 28 United States Code,
    section 1782, if it is satisfied that an order of the same nature would be
    made in like circumstances by the foreign court seised of the dispute at
    that stage of the proceedings. The effect of those decisions is that any
    American court properly advised as to English law on discovery would
E   deny the defendants' request as being for third party discovery which is
    not allowable under English procedure. If it be said that this question
    can be left for the United States district court to decide, the answer is
    that it is better for the English court to deal with the matter and "nip it
    in the bud." It may be that the United States court would not be
    properly advised as to the relevant English law.

       The English court has jurisdiction to restrain a party to proceedings
F   pending in England from seeking or continuing to seek interlocutory
    orders in a foreign jurisdiction for the purposes of those proceedings.
    The English court has an inherent jurisdiction to control its own
    proceedings. Further, it is well established that where proceedings are
    pending before the English court, and proceedings are brought in a
    foreign jurisdiction which concern the same issues, the English court has
G   a discretionary jurisdiction either to stay the English proceedings or to
    restrain by injunction a party to those proceedings from continuing to
    proceed in the foreign court. This jurisdiction was recognised by this
    House in *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58,
    80D–F *per* Lord Diplock. This jurisdiction is commonly invoked in the
    so-called "forum conveniens" cases, where there is a choice of forum for
    determination of substantive issues between the parties. See *per* Lord
H   Scarman, at p. 95D. This jurisdiction must also exist where the foreign
    proceedings are of a purely interlocutory nature, but which overlap with
    the normal interlocutory processes before the English court. Indeed, it is
    an obvious and an "a fortiori" case. Thus here the United States

South Carolina Co. v. Assurantie N.V. (H.L.(E.))                    [1987]

proceedings are only ancillary proceedings and therefore there is no   A
reason why the English court should not have granted the injunction
appealed against.

   *The Lisboa* [1980] 2 Lloyd's Rep. 546 is distinguishable because that
was a case where proceedings were started in Venice in order to obtain
security if the action was subsequently instituted in Italy. That case
cannot be described as one of a foreign court's interlocutory jurisdiction
being invoked in English proceedings. It was not an interlocutory   B
application for the purposes of English proceedings. The line of cases
cited by Robert Goff L.J. in *Bank of Tokyo Ltd. v. Karoon (Note)*
[1987] A.C. 45, is closer to the present case. The present case is one
where it is proper to grant an injunction to protect the jurisdiction of
the English court.

   *Armstrong v. Armstrong* [1892] P. 98 lays down the correct approach   C
to the present problem; the principles stated there are applicable to the
present case. The essential question is: who should have control over the
present matter? The true answer is that it should be the English court
which should have control.

   Suppose that in the present case the plaintiffs had attempted in the
United States Court to obtain pre-trial depositions from the defendants'
employees. Such an application would surely be restrained because it   D
would be so alien to English procedure. So also third-party discovery is
alien to English procedure. The matter can be tested by the following
example. If a party went to an English court and asked it to issue letters
rogatory in relation to third parties' documents under Order 39, such an
application would be dismissed. If the party then went to the United
States court and requested it under 28 United States Code, section 1782,   E
the English court should intervene on the ground that it was vexatious;
the party having failed before the English court, it cannot obtain the
evidence by utilising a foreign jurisdiction. But the answer cannot be
any different merely because the party in question goes to the United
States court first as in the present case.

   *Erhmann v. Ehrmann* [1896] 2 Ch. 611, shows that the English court   F
will not grant letters rogatory except in relation to evidence which is
directly relevant to the issues in the case. Wider "discovery" will not be
made the subject of letters rogatory—let alone in respect of documents
held by a third party.

   In conclusion, it is the plaintiffs' contention that they have a legal or
equitable right which it is appropriate for the English court to protect by
injunction, namely the right, as parties to proceedings in the English   G
court, to have those proceedings conducted in accordance with the
procedural laws and practices of England, and of no other jurisdiction.
Moreover, it is their contention that the defendants' application for
interlocutory relief in the United States is unconscionable and unjust to
the plaintiffs. If granted, it would allow the defendants to take advantage
of procedural steps and remedies available under English procedural
law, while at the same time avoiding some of the restrictions on those   H
steps and remedies which would nevertheless continue to impinge upon
the plaintiffs.

   *Symons* followed.

1 A.C.                South Carolina Co. v. Assurantie N.V. (H.L.(E.))

A      *Alexander Q.C.* in reply. In the present case it is accepted that there
is an advantage under the foreign proceedings which cannot be obtained
in the English proceedings. It is this factor which distinguishes the
present case from *Armstrong v. Armstrong* [1892] P. 98, as applied by
Robert Goff L.J. in the *Tokyo Bank* case *(Note)* [1987] A.C. 45. The
defendants rely on the principle on which they opened this appeal,
namely, that the plaintiffs can only succeed if they can show that the
B      defendants' application before the United States court is unconscionable.
As to the principle adumbrated by Griffiths L.J. below, the manner in
which a party gathers evidence is for that party. It may gather it
voluntarily or in pursuance of a contract. These methods do not deprive
the English court in any way of control of its own proceedings.
        [Reference was also made to *In re Westinghouse Electric Corporation
C      Uranium Contract Litigation M.D.L. Docket No. 235 (Nos. 1 and 2)*
[1978] A.C. 547, 562B–F.]

        Their Lordships took time for consideration.

        29 July. LORD BRIDGE OF HARWICH. My Lords, for the reasons
given in the speech of my noble and learned friend, Lord Brandon of
D      Oakbrook, with which I agree, I would allow this appeal.

        LORD BRANDON OF OAKBROOK. My Lords, the question for decision
in this appeal is a novel one and can be stated in this way. An action
between A and B is pending before an English court. While it is
pending B, exercising a statutory right potentially available to him under
E      the federal law of the United States, applies to a district court of the
United States for an order that persons resident in the United States,
who are not parties to the action before the English court, should give
him pre-trial discovery of documents relevant to the issues in that
action. In those circumstances, is it right for the English court, on the
application of A, to grant an injunction against B prohibiting him from
prosecuting further his proceedings in the United States district court?
F      Hobhouse J. at first instance, and the Court of Appeal (Griffiths, Slade
and Lloyd L.JJ.) on appeal from him, have held that it is right for such
an injunction to be granted. The parties enjoined (for in the instant case
there are three of them) now bring a further appeal with the leave of
your Lordships' House.
        The background of the case is to be found in what can conveniently
G      be described as a three-tier insurance arrangement. The company which
first insured the relevant risks was a United States company, United
National Insurance Co. ("United National"). United National re-insured
the risks which it had insured with another United States company,
South Carolina Insurance Co. ("South Carolina"). South Carolina in
turn re-re-insured the risks which it had re-insured with a number of
other insurance companies in the London market. These other insurance
H      companies included a Dutch company, Assurantie Maatschappij "De
Zeven Provincien" (Seven Provinces) and two Middle or Far Eastern
companies, Al Ahlia Insurance Co. ("Al Ahlia") and Arabian Seas
Insurance Co. ("Arabian Seas"). In or about 1984 South Carolina called

Lord Brandon
of Oakbrook             South Carolina Co. v. Assurantie N.V. (H.L.(E.))             [1987]

upon Seven Provinces, Al Ahlia and Arabian Seas to pay substantial   A
sums which South Carolina claimed to be due from them under the
contracts of re-re-insurance concerned. Seven Provinces, Al Ahlia and
Arabian Seas refused to make the payments asked for, denying that they
were liable to do so.

    As a result South Carolina brought two actions in the Commercial
Court here in order to recover the sums which they claimed to be
payable, together with interest on such sums. In the first action, which   B
was begun on 12 December 1984, Seven Provinces is the sole defendant.
In the second action, which was begun on 28 February 1985, Al Ahlia is
the first defendant and Arabian Seas is the second defendant. It was the
original intention of the solicitors acting for South Carolina to seek
summary judgment in both actions under R.S.C., Order 14. However,
at an application to fix a date for the hearing of the Order 14   C
proceedings against Seven Provinces, counsel for the latter indicated that
a number of substantial defences would be raised to South Carolina's
claim. These defences included (1) misrepresentation or non-disclosure
regarding the retention position on the part of South Carolina; (2) non-
disclosure of a previous bad loss record on the business concerned; (3)
excessive deductions from premiums; and (4) payment of claims outside
the limits of the relevant treaty.   D

    The underwriting agent for United National through whom business
was placed with it was Pacific General Agency Inc. ("P.G.A."). The loss
adjusters who investigated the claims made against United National
were Arthur Campbell-Husted and Co. ("Campbell-Husted"). The
principal place of business of both P.G.A. and Campbell-Husted is in
the State of Washington.   E

    My Lords, Seven Provinces, Al Ahlia and Arabian Seas ("the re-re-
insurers") are, by reasons of their position, remote from the facts in
dispute, and obliged to rely for detailed information about them on such
documents as they can obtain from South Carolina or P.G.A. and
Campbell-Husted. The latter two, however, were not the agents of
South Carolina in connection with the relevant transactions; it follows
that discovery of documents by South Carolina in the two actions in   F
England would not extend to relevant documents held by them. In this
situation, if the re-re-insurers are to achieve their legitimate object of
inspecting and copying where necessary, relevant documents held by
P.G.A. and Campbell-Husted, some other means have to be found to
enable them to do so.

    In November 1984, after South Carolina had put forward its claims   G
against the re-re-insurers, but before the two actions in England were
begun, the latter had asked P.G.A. if they could inspect the documents
in which they were interested at Seattle on 7 December 1984. P.G.A.
referred the request to their principal, United National, which in turn
consulted South Carolina. It appears that, on the advice of South
Carolina's English solicitors, the request for inspection was, in effect,
refused. The two actions in England were subsequently begun.   H

    My Lords, 28 United States Code, section 1782, provides:

        "Assistance to foreign and international tribunals and to litigants
        before such tribunals. (a) The district court of the district in

A  which a person resides or is found may order him to give his
testimony or statement or to produce a document or other thing
for use in a foreign or international tribunal. The order may be
made pursuant to a letter rogatory issued, or request made, by a
foreign or international tribunal or upon the application of any
interested person and may direct that the testimony or statement
be given, or the document or other thing be produced, before a
B  person appointed by the court. By virtue of his appointment, the
person appointed has power to administer any necessary oath and
take the testimony or statement. The order may prescribe the
practice and procedure, which may be in whole or in part the
practice and procedure of the foreign country or the international
tribunal, for taking the testimony or statement or producing the
document or other thing. To the extent that the order does not
C  prescribe otherwise, the testimony or statement shall be taken,
and the document or other thing produced, in accordance with
the Federal Rules of Civil Procedure."

On 28 March 1985, before the re-re-insurers had served their points
of defence and counterclaim in the two actions against them in England,
D  they applied by motion to the district court of the United States,
Western District of Washington, at Seattle, for an order under section
1782 above. The motion, the title of which referred to the two actions in
England, asked for an order against P.G.A. and Campbell-Husted
involving two matters. The first matter was the production and inspection
of numerous specified classes of documents of the kind which could
reasonably be expected to have come into being in the course of the
E  transaction of the insurance business which had led to United National,
having settled claims itself, to recover from South Carolina as its re-
insurers, and to South Carolina then claiming to recover over from the
re-re-insurers. The second matter was the appearance of three named
persons from P.G.A. and Campbell-Husted to give testimony by
deposition. The motion was supported by a memorandum and an
F  affidavit.

Notice of the re-re-insurers' motion was served on P.G.A. and
Campbell-Husted. South Carolina was also served with notice of the
motion, or otherwise made aware of its having been lodged. Neither
P.G.A. nor Campbell-Husted appeared before the district court to resist
the application. South Carolina, however, did so appear, and having
G  indicated their objection to it, was given until 29 April 1985 to file its
affidavit in opposition. It is to be inferred from the foregoing that
neither P.G.A. nor Campbell-Husted objects to producing the documents
listed in the motion for inspection, and where necessary for copying, by
the re-re-insurers, and that it is only the objection of South Carolina
that has stood in the way of their doing so.

On 24 April 1985, before the date fixed for filing its affidavit in
H  opposition in the United States district court, South Carolina issued
summonses in the two actions in England. By their summonses South
Carolina sought (1) an order that the re-re-insurers should withdraw
their application to the United States district court, (2) an injunction

34

Lord Brandon
of Oakbrook    South Carolina Co. v. Assurantie N.V. (H.L.(E.))    [1987]

A
restraining the re-re-insurers from proceeding further with such
application, and (3) a declaration that the application was an abuse of
the process of the English court.

My Lords, the summonses were heard by Hobhouse J. on 25 April
1985. He declined to make the declaration asked for, but granted South
Carolina injunctions restraining the re-re-insurers until further order
from taking any further steps in their motion before the United States
B
district court and from enforcing any order made by that court on such
motion. The main ground on which Hobhouse J. decided to grant such
injunctions appears from pp. 10 and 11 in Appendix I to the printed
case. Having set out what he called the framework of the matter, he
said:

"It involves a question of principle as to whether or not the English
court should retain the control of its own procedure and the    C
proceedings that are before it. I have no doubt that the answer to
be given to that question is that the English court should retain that
control."

The decision of Hobhouse J. was, as I indicated earlier, affirmed by
the Court of Appeal [1986] Q.B. 348. Griffiths L.J. gave the principal
D
judgment, with which Slade and Lloyd L.JJ. both agreed. The main
reason which Griffiths L.J. gave for his decision was similar to that
relied on by Hobhouse J. He said, at p. 358:

"Once the parties have chosen or accepted the court in which their
dispute is to be tried they must abide by the procedure of that
country and that court must be master of its own procedure.    E
Litigation is expensive enough as it is, and if a party fighting a case
in this country has to face the prospect of fighting procedural battles
in whatever other jurisdiction his opponent may find a procedural
advantage it may impose intolerable burdens, and encourage the
worst and most oppressive form of procedural forum shopping. We
should set our face against any such situation developing.

"Severe dislocation to the timetable of the English litigation is a    F
readily foreseeable consequence of unrestrained access to foreign
procedural remedies. This is likely to cause hardship or inconvenience
not only to the other party to that litigation but will also affect
other litigants whose cases are listed upon forecasts dependent upon
litigation being conducted in accordance with our own rules of
procedure. As the judge said, the court will lose control of its own    G
proceedings. Furthermore, one party might be able to gain a very
unfair advantage in the English procedure if he was able to take the
deposition of and cross-examine a witness whom he would never
call on his own behalf at the trial, for example, the employees or
business associates of his opponent. I think Mr. Sumption [counsel
for the re-re-insurers] recognised this when he said he would be
content to accept the stay in respect of his application to take the    H
depositions of the witnesses from P.G.A. and Arthur Campbell-
Husted & Co. I am therefore satisfied that as a matter of principle
the court must have an inherent jurisdiction to make any necessary

A    order to ensure that the litigation is conducted in accordance with its own procedures."

My Lords, before examining the question whether Hobhouse J. and the Court of Appeal were right or wrong to grant the injunctions now appealed against, it is necessary to draw attention to a number of preliminary matters.

B    The first matter to which attention needs to be drawn is the existence of an essential difference between the civil procedures of the High Court in England on the one hand, and of courts of the United States on the other, with regard to what may be compendiously described as pre-trial discovery. Under the civil procedure of the High Court in England, pre-trial discovery may take two forms. The first form, which is far and

C    away the more common, is by way of disclosure and inspection of relevant documents under R.S.C., Ord. 24. The second form, which is comparatively rare, is by way of the asking and answering on oath of interrogatories under R.S.C., Ord. 26. Such discovery is, however, subject to two important limitations, one relating to its scope and the other to the stage of an action at which it normally takes place. So far as the scope of discovery is concerned, it is limited to the disclosure and

D    inspection of documents in the possession or power of the parties to the action, or to the asking and answering on oath of interrogatories as between such parties. So far as the stage of an action at which discovery normally takes place is concerned, it is the general rule that the two forms of discovery to which I have referred do not take place until the formal pleadings by both sides have been completed and the issues in disputes thereby fully and clearly defined. In this connection, however,

E    it is right to say that the court has power to order either form of discovery at any stage of an action, including a stage earlier than the completion of pleadings; but such power is rarely exercised and then only on special grounds, for instance when discovery is needed in order that justice may be done in interlocutory proceedings.

F    Because of the first limitation to which I have referred, there is no way in which a party to an action in the High Court in England can compel pre-trial discovery as against a person who is not a party to such action, either by way of the disclosure and inspection of documents in his possession or power, or by way of giving oral or written testimony. I would, however, stress the word "compel" which I have used in the preceding sentence, for there is nothing to prevent a person who is not a

G    party to an action from voluntarily giving to one or other or both parties to it either disclosure and inspection of documents in his possession or oral or written testimony.

The procedure of the High Court in England, while not enabling parties to an action to compel pre-trial discovery as against a person who is not a party to such action, nevertheless affords ample means by which such a person, provided that he is within the jurisdiction of the

H    court, can be compelled either to give oral testimony, or to produce documents in his possession or power, at the trial of the action itself. Under R.S.C., Ord. 38, Part II, such a person may be compelled to give oral testimony at the trial by the issue and service on him of a subpoena

ad testificandum, or to produce documents in his power or possession   A
(so long as they are adequately described and defined) by the issue and
service on him of a subpoena duces tecum. The issue of such subpoenas
is in the first instance a ministerial rather than a judicial act, and a party
may therefore issue subpoenas of either kind as he thinks fit; the court,
however, has power to set aside any subpoena on proper grounds, for
instance, irregularity of form, irrelevance, oppressiveness or abuse of the
process.                                                                 B

   The procedure of the High Court in England includes a further
power of the court, conferred on it by R.S.C., Ord. 38, r.13, to order
any person to attend any proceedings in a cause or matter and produce
any document to be specified or described in the order, the production
of which appears to the court to be necessary for the purpose of that
proceeding. It has, however, long been established that this rule is not   C
intended to be used, and cannot properly be used, to enable a party to
an action to obtain pre-trial disclosure and inspection of documents in
the possession or power of a person who is not a party to such action. It
is a rule of limited application, involving the production of a document
or documents to the court itself rather than to either of the parties to an
action.

   My Lords, the civil procedure of courts in the United States differs   D
essentially from that in the High Court in England in that under it
parties to an action can compel, as against persons who are not parties
to it, a full measure of pre-trial discovery, including both the disclosure
and production for inspection and copying of documents, and also the
giving of oral or written testimony. This power of compulsion can be,
and regularly is, used at an early stage of an action.                   E

   The second matter to which attention needs to be drawn is that 28
United States Code, section 1782, as appears from its terms which I set
out earlier, expressly provides that an order made under it may prescribe
the practice and procedure, which may be in whole or in part the
practice and procedure of the foreign country or the international
tribunal, for taking the testimony or statement or producing the
document or other thing; and that, to the extent that the order does not   F
prescribe otherwise, the testimony or statement shall be taken, and the
document or other thing produced, in accordance with the Federal Rules
of Procedure.

   Reference was made in the two courts below and again in your
Lordships' House to certain United States authorities which bear on the
exercise of a district court's powers under section 1782. In a decision of   G
the United States District Court of Pennsylvania, *In re Court of the
Commissioner of Patents for Republic of South Africa* (1980) 88 F.R.D.
75, 77, Judge Newcomer said:

      "[I, 2] It is of great concern to this court that counsel for opponent
      has not been able to represent to this court that the documents and
      testimony for which opponents request a discovery order are
      discoverable under South African law. Indeed, discussions with   H
      counsel lead this court to suspect that these materials would *not* be
      available through South African procedures. Clearly, this court
      should not by its exercise of the discretion allowed it under section

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          Lord Brandon
                                                                           of Oakbrook

A       1782 allow litigants to circumvent the restrictions imposed on
        discovery by foreign tribunals. Few actions could more significantly
        impede the development of international co-operation among courts
        than if the courts of the United States operated to give litigants in
        foreign cases processes of law to which they are not entitled in the
        appropriate foreign tribunals."

B       Further in *John Deere Ltd. and Deere & Co. v. Sperry Corporation*
        (1985) 754 F.2d 132, 135, Judge Garth, giving the judgment of the
        United States Court of Appeals for the Third Circuit, said:

            "As a co-operative measure, section 1782 cannot be said to ignore
            those considerations of comity and sovereignty that pervade
            international law. A grant of discovery that trenched upon the
C           clearly established procedures of a foreign tribunal would not be
            within section 1782."

        My Lords, it was contended for South Carolina, on the basis of these
        authorities, that the re-re-insurers' application to the district court of the
        United States was bound to fail. The ground relied on was that, since
        the procedure of the High Court in England did not enable parties to an
D       action to compel pre-trial discovery against persons not parties to it, the
        district court would not permit the re-re-insurers to circumvent that
        limitation by granting them an order for such discovery under section
        1782.

        It appears to me that there may well be considerable force in this
        contention. It is not possible, however, for your Lordships, on the
        limited material before you, to decide for yourselves in advance how the
E       United States district court would see fit to exercise the discretion
        conferred on it by section 1782, in the particular circumstances of this
        case, and having regard to the characteristics of civil procedure in the
        High Court in England which I endeavoured to summarise earlier.

        The third matter to which attention needs to be drawn concerns
        certain changes in the positions of the parties which have occurred since
        the original hearing of South Carolina's two summonses before
F       Hobhouse J. The first change of position relates to the memorandum
        lodged in support of the re-re-insurers' application to the United States
        district court, in which they asserted:

            "As evidenced by the attached affidavit of Francis Otley Mackie the
            petitioners herein are seeking this court's assistance in obtaining
            information and documentation which is necessary, material and
G           relevant to litigation pending in the courts of England for use in
            those proceedings. The affidavit further establishes that were all the
            parties residents of England, the requested discovery would be
            permitted pursuant to the rules of procedure and discovery in
            England. Accordingly, the petitioners' motion for taking of testimony
            and the production of documents should be granted."

H       Mr. Mackie, whose affidavit is referred to at the beginning of the
        above passage, is a partner in the firm of solicitors acting for the re-re-
        insurers in the two actions in England. The relevant part of that affidavit
        is paragraph 12, in which Mr. Mackie deposed, inter alia, as follows:

38

"Discovery of such documentation and testimony is permitted   A
according to the English rules of procedure . . . . Petitioners would
be able to obtain writs of subpoena duces tecum issued by the High
Court of England . . . directing these entities to produce the
documents requested and directing them individually to appear and
give testimony at depositions."

These statements in the re-re-insurers' memorandum and Mr.   B
Mackie's affidavit were criticised by Hobhouse J. and by Griffiths L.J. in
the Court of Appeal as giving such an incomplete and inaccurate
account of the procedure of the High Court in England with regard to
discovery as seriously to mislead the United States district court. Griffiths
L.J., however, expressly acquitted Mr. Mackie of any deliberate intention
to mislead. Before your Lordships Mr. Robert Alexander, who appeared   C
as leading counsel for the appellant re-re-insurers, accepted unreservedly
that the passages in question were incomplete and inaccurate, and as a
consequence liable to mislead. The main error, as will be apparent, is
the failure to distinguish clearly between compelling a person not a party
to an action to give pre-trial discovery on the one hand, and compelling
him to give oral evidence and produce documents at the trial itself on
the other hand. I think that it is right for your Lordships to say that the   D
criticisms of that error made by the two courts below were fully justified
and that it is most unfortunate that it should ever have occurred. That
said, however, having regard to the admission of such error freely made
by Mr. Alexander for the re-re-insurers, and having regard further to
the summary which I endeavoured to give earlier of the relevant
procedure of the High Court in England, it seems to me that the error is   E
no longer of significance in the consideration of this appeal.

The second change of position concerns the scope of the re-re-
insurers' application to the United States district court. As I indicated
earlier, that application as originally framed covered two distinct matters:
first, the production and inspection of specified classes of documents;
and, secondly, the appearance of three named persons from P.G.A. and
Campbell-Husted to give testimony by depositions. On the face of the   F
motion it appeared that what the re-re-insurers were seeking in relation
to the second of these matters was the taking of oral evidence from the
persons named relevant to the issues in the English actions, such
evidence to be recorded in depositions. Before the Court of Appeal,
however, Mr. Sumption for the re-re-insurers expressly abandoned any
intention to achieve this end, and before your Lordships Mr. Alexander   G
made it clear that the appearance of the named persons was only sought
for the purpose of their producing and identifying the relevant documents
held by P.G.A. and Campbell-Husted, and in no way for the purpose of
their giving oral evidence to be recorded in depositions with regard to
issues of fact arising in the English actions.

The third change of position arises from the stage which the two
actions in England have now reached. At the time when South Carolina's   H
applications first came before Hobhouse J. the re-re-insurers had not yet
served their points of defence and counterclaim, so that the issues
between the parties had not yet been defined by pleadings and no

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          Lord Brandon
                                                                          of Oakbrook

A   discovery of documents as between the parties had yet taken place.
    Hobhouse J. regarded this as a significant matter in exercising the
    discretion to grant injunctions which he held that he had. During the
    hearing before the Court of Appeal, however, the re-re-insurers served
    points of defence and counterclaim, and since then discovery of
    documents as between the parties has taken place. The actions in
    England are, therefore, much further advanced than they were when
B   South Carolina's applications first came before the judge.

        The fourth change of position is this. Following the decision of the
    Court of Appeal South Carolina arranged for the re-re-insurers to have
    controlled access to certain documents held by P.G.A. and Campbell-
    Husted. According to the re-re-insurers, however, substantial restrictions
    were imposed by South Carolina on the documents which they were
C   allowed to inspect under this arrangement. It is the re-re-insurers' case,
    therefore, that their application to the United States district court
    remains necessary in order to enable them to have inspection of other
    documents to which, by reason of the control exercised by South
    Carolina, they have not so far had access. Your Lordships were not
    asked to go into the details of these matters, which are in dispute
    between the parties, and it is right, I think, for the purposes of this
D   appeal for your Lordships to proceed on the basis that the re-re-insurers
    have at least an arguable case with regard to them.

        The fifth and final matter to which attention should be drawn is that
    the judge of the United States district court before whom the re-re-
    insurers' application under section 1782 is pending has helpfully directed
    that further proceedings in that application should be stayed until the
E   determination first of the re-re-insurers' appeal to the Court of Appeal,
    and then of their further appeal to your Lordships' House.

        My Lords, having drawn attention to these various preliminary
    matters, I turn to consider whether the injunctions granted by
    Hobhouse J. and affirmed by the Court of Appeal should be allowed to
    stand. I put the question in that form because of the various ways
    described by me above in which the positions of the parties have
F   changed since the original hearing before Hobhouse J.

        As appears from the passages from the judgments of Hobhouse J.
    and Griffiths L.J. which I set out earlier, both courts below treated
    South Carolina's applications for injunctions as raising matters of
    principle for decision. I have no doubt that they were right so to treat
    them. Putting the point differently, the question which your Lordships
G   have to decide is whether the circumstances of the case are such as to
    give the court power to grant the injunctions at all, and not whether,
    there being such power, it was a proper exercise of discretion to grant
    them rather than to refuse them.

        In considering the question which I have formulated, it will be
    helpful in the first place to state certain basic principles governing the
    grant of injunctions by the High Court. The first basic principle is that
H   the power of the High Court to grant injunctions is a statutory power
    conferred on it by section 37(1) of the Supreme Court Act 1981, which
    provides that "the High Court may by order (whether interlocutory or
    final) grant an injunction in all cases in which it appears to the court to

Lord Brandon
of Oakbrook          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          [1987]

be just and convenient to do so." That provision is similar to earlier     A
provisions of which it is the successor, namely, section 45(1) of the
Supreme Court of Judicature (Consolidation) Act 1925 and section 25(8)
of the Supreme Court of Judicature Act 1873. The second basic principle
is that, although the terms of section 37(1) of the Act of 1981 and its
predecessors are very wide, the power conferred by them has been
circumscribed by judicial authority dating back many years. The nature
of the limitations to which the power is subject has been considered in a     B
number of recent cases in your Lordships' House: *Siskina (Owners of
cargo lately laden on board) v. Distos Compania Naviera S.A.* [1979]
A.C. 210; *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557; and
*British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58. The effect
of these authorities, so far as material to the present case, can be
summarised by saying that the power of the High Court to grant     C
injunctions is, subject to two exceptions to which I shall refer shortly,
limited to two situations. Situation (1) is when one party to an action
can show that the other party has either invaded, or threatens to invade,
a legal or equitable right of the former for the enforcement of which the
latter is amenable to the jurisdiction of the court. Situation (2) is where
one party to an action has behaved, or threatens to behave, in a manner
which is unconscionable. The third basic principle is that, among the     D
forms of injunction which the High Court has power to grant, is an
injunction granted to one party to an action to restrain the other party
to it from beginning, or if he has begun from continuing, proceedings
against the former in a foreign court. Such jurisdiction is, however, to
be exercised with caution because it involves indirect interference with
the process of the foreign court concerned.     E

The latter form of injunction may be granted in such circumstances
as to constitute an exception to the second basic principle stated above.
This may occur where one party has brought proceedings against another
party in a foreign court which is not the forum conveniens for the trial
of the dispute between them, as that expression was defined and applied
in *MacShannon v. Rockware Glass Ltd.* [1978] A.C. 795. In such a case
the party who has brought the proceedings in the foreign court may not,     F
by doing so, have invaded any legal or equitable right of the other
party, nor acted in an unconscionable manner. The court nevertheless
has power to restrain him from continuing his foreign proceedings on
the ground that there is another forum in which it is more appropriate,
in the interests of justice, that the dispute between the parties should be
tried. The present case, however, is not concerned with a choice     G
between two competing forums for the trial of a dispute, and the
exception to which I have just referred is therefore not relevant to it.

The power of the court to grant *Mareva* injunctions may also, before
it was statutorily recognised, have been a further exception to the
second basic principle stated above. That power, however, has now
been expressly recognised by section 37(3) of the Supreme Court Act
1981, and again the present case is in no way concerned with it.     H

Ignoring these exceptions, therefore, and applying the basic principles
which I have stated to the present case, the first question for
consideration is whether South Carolina has shown that what I have

A  described above as situation (1) exists. Has South Carolina shown that
the re-re-insurers, by beginning and intending to prosecute their
application to the United States district court, has invaded, or threatened
to invade, a legal or equitable right of South Carolina for the
enforcement of which the re-re-insurers are amenable to the jurisdiction
of the court? It was contended by Mr. Rokison on behalf of South
Carolina that South Carolina did indeed have such a legal or equitable
B  right, but it appeared to me that he had great difficulty in formulating
the legal or equitable right on which he relied. Neither of the courts
below decided as they did on the basis that the re-re-insurers had by
their conduct invaded a legal or equitable right of South Carolina, and I
cannot see how such a case can be made out. I would therefore hold
that South Carolina has not shown that situation (1) exists.

C      The second question for consideration is whether South Carolina has
shown that what I have described above as situation (2) exists. Has
South Carolina shown that the re-re-insurers, by beginning and intending
to prosecute their application to the United States district court, have
acted in a manner which is unconscionable? It is difficult, and would
probably be unwise, to seek to define the expression "unconscionable
conduct" in anything like an exhaustive manner. In my opinion, however,
D  it includes, at any rate, conduct which is oppressive or vexatious or
which interferes with the due process of the court.

       Although neither Hobhouse J. at first instance, nor Griffiths L.J. in
the Court of Appeal, stated in terms that they thought it right to grant
injunctions on the ground that the conduct of the re-re-insurers in
making their application to the United States district court was
E  unconscionable, it seems to me to be implicit in their reasons that they
regarded it as being so. Hobhouse J. based his decision expressly on the
need for the court to retain control of its own process, with the
necessary implication that the re-re-insurers' conduct was an interference
with such control and therefore an interference with the due process of
the court. Griffiths L.J. based his decision on three grounds: first (like
Hobhouse J.), that the court must retain control of its own process;
F  secondly, that the civil procedure of United States courts is significantly
different from that of English courts, and the parties, by submitting to
the jurisdiction of an English court, must be taken to have accepted its
procedure; and, thirdly, that unrestricted access to foreign procedural
remedies was liable to produce hardship in the form of increased costs
and inconvenience. I shall consider each of these grounds in turn.

G      I consider, first, the ground that the re-re-insurers' conduct was an
interference with the court's control of its own process. It is not clear to
me why this should be so. Under the civil procedure of the High Court
the court does not, in general, exercise any control over the manner in
which a party obtains the evidence which he needs to support his case.
The court may give him help, certainly; for instance by discovery of
documents inter partes under R.S.C., Ord. 24; by allowing evidence to
H  be obtained or presented at the trial in various ways under Orders 38
and 39; and by the issue of subpoenas under Part II of Order 38, to
which I referred earlier. Subject, however, to the help of the court in
these various ways, the basic principle underlying the preparation and

42

presentation of a party's case in the High Court in England is that it is    A
for that party to obtain and present the evidence which he needs by his
own means, provided always that such means are lawful in the country
in which they are used. It was not in dispute that, if P.G.A. and
Campbell-Husted, uninfluenced by the control exercised over them by
South Carolina on the advice of the latter's English solicitors, had freely
and voluntarily allowed the re-re-insurers to inspect, and where necessary
to copy, all the documents referred to in the latter's application, it could    B
not possibly have been said that there had been any interference with
the English court's control of its own process. That being so, I cannot
see why, since the Federal law of the United States authorises an
application of the kind made by the re-re-insurers in this case, the
making of such application, which may or may not succeed in whole or
in part, should be regarded as being such an interference either. I    C
cannot, therefore, agree with the first ground of decision relied on by
the Court of Appeal.

I consider, secondly, the ground that the procedure of United States
courts is significantly different from that of English courts, and the
parties, by submitting to the jurisdiction of an English court, must be
taken to have accepted its procedure. It is, no doubt, true that the re-re-
insurers, by entering unconditional appearances in the two English    D
actions, can be said in a certain sense to have accepted the procedure of
that court. Your Lordships were not, however, informed of any ground
on which the re-re-insurers could, with any prospect of success, have
contested the jurisdiction of the High Court in England in respect of the
disputes which are the subject matter of the two actions concerned. Be
that as it may, I cannot see that the re-re-insurers, by seeking to    E
exercise a right potentially available to them under the Federal law of
the United States, have in any way departed from, or interfered with,
the procedure of the English court. All they have done is what any party
preparing his case in the High Court here is entitled to do, namely to try
to obtain in a foreign country, by means lawful in that country,
documentary evidence which they believe that they need in order to
prepare and present their case. It was said that the re-re-insurers could    F
have applied to the High Court under R.S.C., Ord. 39, r. 2, for letters
of request to issue to the proper judicial authorities in the United States.
But 28 United States Code, section 1782, allows an application to be
made either indirectly by the foreign court concerned or directly by an
interested party, and I can see no good reason why the re-re-insurers
should not have chosen whichever of these two alternatives they    G
preferred. It is, I think, of the utmost importance to appreciate that the
reason why English procedure does not permit pre-trial discovery of
documents against persons who are not parties to an action is for the
protection of those third parties, and not for the protection of either of
the persons who are parties to the action. I cannot, therefore, agree
with the second ground of decision relied on by the Court of Appeal.

I consider, thirdly, the ground that unrestrained access to foreign    H
procedural remedies was liable to cause hardship in the form of increased
costs and inconvenience. So far as increased costs are concerned,
Griffiths L.J. was referring to increased costs incurred or to be incurred

A   by South Carolina in contesting the proceedings in the United States
district court. If, however, the re-re-insurers are right in their contention
that they have not yet, by reason of the control exercised by South
Carolina, had access to all the documents to which they believe that
they need access in order to prepare their case in the two English
actions, it can reasonably be said that any liability for increased costs
incurred by South Carolina is in a sense self-imposed. If they had been
B   willing to permit P.G.A. and Campbell-Husted to allow the re-re-
insurers to inspect, and where necessary copy, all the documents to
which the latter had sought access, the making or prosecution of the re-
re-insurers' application to the United States district court would not
have been necessary. In this connection it is right to stress what I have
already stated earlier, that P.G.A. and Campbell-Husted, left to
C   themselves, would voluntarily have given the re-re-insurers permission to
inspect, and where necessary copy, all the documents to which the latter
sought access. It was said for South Carolina that the documents not so
far disclosed were not relevant to the issues in the two English actions.
If that is so, I cannot help asking myself why South Carolina has gone to
such lengths to prevent the disclosure of such documents. So far as
inconvenience is concerned, it is apparent that Griffiths L.J. had two
D   kinds of inconvenience in mind: first inconvenience in relation to the
two actions immediately concerned in the form of delay in getting them
tried and possible prolongation of the trial when it took place; and,
secondly, inconvenience to other litigants by reason of the consequent
dislocation of the time-table for the trial of other cases in the congested
list of the Commercial Court. So far as delay is concerned, it is perhaps
E   ironical that the only result of South Carolina seeking to obtain
injunctions against the re-re-insurers has been to increase greatly
whatever delay the re-re-insurers' application, if allowed to proceed
unopposed, might otherwise have caused. I recognise that the re-re-
insurers' application may result in some increased costs to South
Carolina, but these could, as I indicated earlier, have easily been
avoided by a different attitude on South Carolina's part. I recognise also
F   that some inconvenience of the two kinds to which I have referred may
arise from the re-re-insurers' application; but, if there is a reasonable
possibility that such inconvenience is the price of justice being fully done
at the trial of the two English actions, then it seems to me to be a price
which must necessarily be paid. In any event, I cannot see how the re-
re-insurers' application, made in what may prove to be a just cause, can,
G   solely on the ground that it occasions the extra costs and inconvenience
under discussion, be categorised as an interference with the court's
control of its own process. The court can control any excessive delay by
fixing such date for the trial of the two actions as may be just, and
nothing which the re-re-insurers can do can take away or interfere with
the court's control in this respect. As to increased costs these will, no
doubt, be a matter for the consideration of the Commercial judge at the
H   conclusion of the trial, and I do not think it would be right for your
Lordships to express any views, one way or the other, about such
matter. For these reasons I cannot agree with the third ground of
decision relied on by the Court of Appeal.

A My Lords, the result of the views which I have expressed is that
there was, in my opinion, no such interference with the procedure of the
English High Court by the re-re-insurers as would amount to
unconscionable conduct on their part, and so justify, in accordance with
the basic principles which I stated earlier, the exercise of the court's
power to grant injunctions against them. It follows that I would allow
the appeal and set aside the orders of Hobhouse J. dated 25 April 1985
B and of the Court of Appeal dated 23 May 1985. As regards costs in your
Lordships' House, I have no doubt that South Carolina should pay the
costs of the re-re-insurers. As regards costs in the two courts below,
different considerations may apply, first, because of the breadth of the
re-re-insurers' application to the United States district court as originally
framed, and, secondly, because of the misleading nature, in the respect
to which I referred earlier, of the memorandum and affidavit lodged in
C support of such application. I therefore think it desirable that, in
relation to those costs, your Lordships should have the assistance of
further argument from counsel on either side.

LORD BRIGHTMAN. My Lords, in this appeal I respectfully differ from
the conclusion reached by the Court of Appeal. I have had the privilege
of studying in advance the speech of my noble and learned friend, Lord
D Brandon of Oakbrook, and I find myself wholly convinced by his
reasons for moving that this appeal should be allowed. I agree with the
orders that he proposes should be made.

LORD MACKAY OF CLASHFERN. My Lords, I have had the advantage
of reading in draft the speeches prepared by my noble and learned
E friends, Lord Brandon of Oakbrook and Lord Goff of Chieveley. I
agree that it would be wise to make the reservation on the matter to
which Lord Goff of Chieveley has drawn attention but, like him, I agree
with the conclusion reached by Lord Brandon of Oakbrook and with the
reasons he has given for reaching that conclusion.

F LORD GOFF OF CHIEVELEY. My Lords, I find myself to be in respectful
agreement with the conclusion reached by my noble and learned friend,
Lord Brandon of Oakbrook, on this appeal, and with the reasons given
by him for reaching that conclusion. I wish, however, to draw attention
to one matter upon which I have certain reservations, and to which I
attach importance.

G I am reluctant to accept the proposition that the power of the court
to grant injunctions is restricted to certain exclusive categories. That
power is unfettered by statute; and it is impossible for us now to foresee
every circumstance in which it may be thought right to make the remedy
available. In particular, I do not regard the exercise of the power to
restrain a person from commencing or continuing proceedings in a
foreign forum as constituting an exception to certain limited categories
H of case in which it has been said that the power may alone be exercised.
In my opinion, restraint of proceedings in a foreign forum simply
provides one example of circumstances in which, in the interests of
justice, the power to grant an injunction may be exercised. I have

A  elsewhere explained in detail, for reasons which it is unnecessary for me
to repeat in the present case, why, on the basis of a line of established
authority, I am at present inclined to the opinion that an injunction has
generally been granted in such circumstances for the purpose of
protecting the English jurisdiction, and why I doubt, with all respect,
whether the speech of my noble and learned friend, Lord Scarman, in
*Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557, contains the
B  last word on the subject. I refer, in this connection, to my judgment in
*Bank of Tokyo Ltd. v. Karoon* (Note) [1987] A.C. 45.

Even so, I can see no basis for the grant of an injunction in the
present case. In particular, in agreement with my noble and learned
friend Lord Brandon of Oakbrook, and respectfully differing from
Hobhouse J. and the Court of Appeal, I do not consider that the grant
C  of the injunction can be justified as necessary to protect the English
jurisdiction on the facts of the present case. In this, I find myself
entirely in agreement with the reasons expressed in the speech of my
noble and learned friend, Lord Brandon of Oakbrook. I therefore agree
that the appeal should be allowed.

*Appeal allowed with costs.*

D

*Solicitors: Clyde & Co.; Herbert Smith & Co.*

J. A. G.

E

———

F  NOTE

[COURT OF APPEAL]

BANK OF TOKYO LTD. v. KAROON AND ANOTHER

1984   April 3, 4, 5;                          Ackner and Robert Goff L.JJ.
           May 24
G

*Injunction—Jurisdiction to grant—Foreign proceedings—Interpleader*
*proceedings to determine ownership of money held by bank in*
*England—Bank's subsidiary in New York providing information*
*concerning claimant and his accounts—Claimant bringing pro-*
*ceedings in New York against subsidiary—Whether bank entitled*
*to injunction to restrain proceedings in New York*

H
APPEAL from Bingham J.

In 1983 Mr. Majid Karoon started proceedings in New York against the
Bank of Tokyo Ltd., a Japanese bank carrying on business in London, and also
against a wholly-owned subsidiary of that bank, the Bank of Tokyo Trust Co.