# Exhibit 9

# Stefano Ruis

| | |
|---|---|
| **From:** | Alison Anthoine <aanthoine@mansueto.com> |
| **Sent:** | 14 October 2019 23:29 |
| **To:** | Lucas Bento |
| **Cc:** | Alexander Wentworth-Ping |
| **Subject:** | Re: Subpoena re Forged Police Report |

**[EXTERNAL EMAIL]**

Lucas,

Further to our conversation on Friday, I have spoken with Mr. Baram about your proposed agreement, and he remains unwilling to identify his source. He is, however, willing to work to help identify the creator(s) of the false report, including going back to his source and pressing for more information.

I should have the native files tomorrow.

Please see inline below response to questions posed in your email of Sept 23:

1. Was the "lawyer" in your email below male or female? In other words, during the conversation, was the "lawyer" referred to as a "he" or "she"?

The lawyer was referred to as a "he".

2. We understand that Mr. Baram is unwilling at this stage to disclose the distributor's name, but does Mr. Baram in fact know the distributor of the report's name? Did Mr. Baram make any promises or assurances to the distributor of the report?

Mr. Baram knows the identify of his source, to whom he promised confidentiality.

3. Was there any editorial discussion about the forged report and whether to publish it? If so, please produce it.

There is no record on editorial discussion concerning publication of the forged report. For the record, while the report was referred to of the original story and in the update, the report itself was not published.

4. Why did Mr. Baram seek a forensic expert's opinion about the forged report in March 2018, well after the article was published and after Mr. Baram was told by the Met Police that the report was false?

Mr. Baram, in his effort to uncover the source of the report, asked the forensic expert to examine the digital file he had received to see if there was any data that might indicate where it came from.

5. In an email from Mr. Baram to Andrew Forsey on October 19, 2017, Mr. Baram mentions that he has "obtained the arrest report in this case, which describes how the incident is being handled by the city's "gold command," the highest level of police and emergency service officials, for "assessments of forensic evidence and other supporting evidence". These assertions are false and not derived from the forged report. Please produce documents relating to the provenance of this information and confirm whether it came from same source as the forged report.

1

That information came from the same individual who provided the forged report. There are no other documents reflecting that information.

6. In an email from Mr. Baram to Andrew Forsey on October 13, 2017, Mr. Baram mentions that Mr. Pishevar allegedly paid the victim "300,000 pounds", that the "young woman (who is British) dropped the charges" and also mentions a "rape kit". Additionally, the email suggested that, "the police at Bishopsgate are outraged over the situation and are demanding a review of police procedures in this case". These assertions are false and also not derived from the forged report. Please produce documents relating to the provenance of this information and confirm whether it came from the same source as the forged report.

That information came from the same individual who provided the forged report. There are no other documents reflecting that information.

7. In Mr. Baram's undated notes of various calls (produced via a gmail "drafts" document), he records that i) "some people have gotten" the police report; and ii) "DS Brook – in Bishopsgate station, yes he works here can't give out that info (on their first name)". Please produce documents relating to the provenance of this information. As Mr. Baram knows, the Met Police has confirmed that "DS Brook" (a name referenced in the forged report) is not a member or employee of the police.

Mr. Baram notes are his only written records that refer to a call he made to Bishopsgate station. He called and asked to speak with DS Brook and asked for the officer's first name, the person he spoke with told him that DS Brook was not in at that time and declined to provide a first name; that person did not say that there was no such employee as DS Brook.

Best,
    Alison
    ~~~~~~~~~~~~~~~~~~~~~
    Alison Anthoine, Esq.
    Legal & Business Affairs
    Mansueto Ventures LLC
    7 World Trade Center
    New York, NY 10007
    aanthoine@mansueto.com
    212.396.0510
~~~~~~~~~~~~~~~~~~~~~