**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:21-mc-00105-ABJ-RMM |

**NON-PARTY FUSION GPS'S MOTION TO QUASH SUBPOENA FOR DEPOSITION AND SUBPOENA FOR DOCUMENTS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Non-party Bean LLC d/b/a Fusion GPS ("Fusion GPS")  respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), for an order quashing or setting aside the subpoena for deposition of Fusion GPS and the subpoena for documents, both served on Fusion GPS on February 27, 2023, authorized by this Court's Order entered on February 17, 2023, granting Shervin Pishevar's *ex parte* Application under 28 U.S.C. § 1782.

As explained in the accompanying Memorandum of Law and shown by the accompanying exhibits, Fusion GPS does not have the information sought in the Subpoenas. Therefore, the Subpoenas impose an undue burden upon Fusion GPS and are not proportional to the needs of the case and should be quashed. In addition, the Court lacked the statutory authority to grant the *ex parte* Application under § 1782 because the evidence sought is not "for use" in a reasonably contemplated foreign proceeding and the Subpoenas violate the principles of § 1782.

Pursuant to Fed. R. Civ. P. 26(c), counsel for Fusion GPS in good faith conferred with counsel for Mr. Pishevar, in phone calls on March 3 and March 15, 2023, and through subsequent correspondence, *see* Exhibit D, in an attempt to resolve this dispute without court involvement. Mr. Pishevar opposes the relief sought in this motion.

1

Dated:  March 29, 2023

By: ___/s/ Rachel M. Clattenburg_____

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Justin A. DiCharia (D.C. Bar No. 1671109)
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Suite 1200
Washington, DC 20006
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
jdicharia@levyfirestone.com

*Counsel for Fusion GPS*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 29, 2023, I filed the Motion to Quash, Memorandum in Support, and Exhibits on CM/ECF, which served a copy on all counsel of record.

By: _/s/ Rachel M. Clattenburg_

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE APPLICATION OF SHERVIN
PISHEVAR FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C.
§ 1782

Case No. 1:21-mc-00105-ABJ-RMM

**NON-PARTY FUSION GPS'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO QUASH SUBPOENA FOR DEPOSITION AND SUBPOENA FOR DOCUMENTS
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................... 1

**BACKGROUND** ............................................................................................................ 3

    I.     Petitioner Shervin Pishevar's *Ex Parte* Application and Subpoenas ......................... 3

    II.    Mr. Pishevar Deposed Sam Anson *after* Serving the Subpoenas
          on Fusion GPS .......................................................................................................... 4

    III.   The Subpoenas ........................................................................................................... 5

    IV.   Mr. Pishevar's "Contemplated" Proceedings ........................................................... 6

    V.    Mr. Pishevar's Prior Section 1782 Proceedings ...................................................... 7

    VI.   The Instant Dispute ................................................................................................... 8

**LEGAL STANDARDS** ................................................................................................. 9

    I.     Section 1782 .............................................................................................................. 9

    II.    Rule 45 Subpoenas ................................................................................................. 10

    III.   Protective Order ...................................................................................................... 11

**ARGUMENT** ............................................................................................................... 11

    I.     THE SUBPOENAS SHOULD BE QUASHED BECAUSE FUSION GPS DOES
          NOT KNOW THE UK SOURCE'S IDENTITY OR LOCATION, AND DOES NOT
          HAVE INFORMATION ABOUT THE FORGED POLICE REPORT .................... 11

          A. Fusion GPS Does Not Have Possession, Custody, or Control of the Requested
             Documents. ......................................................................................................... 12

          B. The Subpoenas Impose an Undue Burden on Fusion GPS................................. 12

             i.     The Subpoenas Must Be Quashed under Rule 45(d)(3)(A)(iv). .............. 13

             ii.    The Subpoenas Demand Discovery That Is Not Proportional to the Needs
                  of the Case, in violation of FRCP 26(b)(1)............................................... 15

          C. The Subpoenas Seek Information and Documents Not Relevant to Mr. Pishevar's
             "Contemplated" Proceedings. .............................................................................. 17

    II.    THIS COURT LACKS STATUTORY AUTHORITY TO GRANT THE
          APPLICATION BECAUSE THE DISCOVERY SOUGHT IS NOT "FOR USE IN A
          FOREIGN OR INTERNATIONAL TRIBUNAL." ............................................... 18

    III.   THE SUBPOENAS VIOLATE THE PRINCIPLES OF SECTION 1782 ................ 22

          A. Evidence Indicates Respondent Is a Contemplated Participant in Foreign
             Proceedings. ....................................................................................................... 22

          B. The Deposition Subpoena Would Circumvent Foreign Proof-Gathering Rules. . 24

          C. The Subpoenas are Unduly Intrusive or Burdensome .......................................... 24

**CONCLUSION** ............................................................................................................ 25

## INTRODUCTION

Bean LLC d/b/a Fusion GPS (<u>Fusion GPS</u> or <u>Respondent</u>) respectfully submits this memorandum of law in support of its motion to quash, or for a protective order setting aside, the subpoena for deposition of Fusion GPS (<u>Deposition Subpoena</u>) and the subpoena for documents (<u>Document Subpoena</u>), both served on Fusion GPS on February 27, 2023, authorized by this Court's Order entered on February 17, 2023, granting Shervin Pishevar's (<u>Mr. Pishevar</u> or <u>Petitioner</u>) *ex parte* Application under 28 U.S.C. § 1782.

Petitioner seeks to enforce the two Subpoenas against Fusion GPS, a small company in the District with just one employee, despite the fact that Petitioner knows Fusion GPS lacks the knowledge and documentation he seeks through his Section 1782 application. Federal Rule of Civil Procedure 45 prohibits this sort of harassment, and the Subpoenas should be quashed because enforcement of them would subject Fusion GPS to an undue burden.

In support of his Section 1782 application, Petitioner claims to want to pursue litigation in the UK against those who allegedly forged a police report and distributed it in 2017, and, on that basis, sought permission to serve subpoenas on Fusion GPS for documents and testimony regarding that report and its source. The Subpoenas demand identification of the "UK Source" of a "Forged Police Report." But Fusion GPS does not have knowledge of either this source or the related forged police report. Fusion GPS has no copy of this report or any communications about it (let alone its "UK Source"), and Fusion GPS has no recollection that anyone at Fusion GPS received or sent this report. Counsel for Fusion GPS offered a sworn declaration to this effect from a corporate representative. *See* Ex. D, Email from J. Levy to V. Ramos (Mar. 7, 2023), & Ex. A, Decl. G. Simpson. In light of Fusion GPS's lack of information about the UK Source or a police report, anything else Petitioner seeks to learn is irrelevant to his purported interest in a lawsuit

against "the Forgers," and these Subpoenas therefore impose an undue burden on Fusion GPS and should be quashed.

Moreover, Mr. Pishevar's Application conceals from the Court that Sam Anson—the investigator who allegedly approached Mr. Pishevar in early 2021 with "new information" that Fusion GPS provided the police report to the journalist—was, at that time, working for or on behalf of Mr. Pishevar. *See* Ex. A, Decl. G. Simpson ¶ 11. Mr. Pishevar's Application gives the false impression that, in early 2021, an investigator named Mr. Anson was acting *independently* when he approached Mr. Pishevar with "new information" that Mr. Anson would only disclose in response to a subpoena. *Ex Parte* Application & Mem. in Supp. of *Ex Parte* Application (ECF 1) (Pishevar Mem.) at 2, 12. But in fact, Mr. Anson was working for or on behalf of Mr. Pishevar during this whole period. That fact undermines Mr. Anson's attorney's proffer and his recent post-application deposition testimony, discussed later in this brief.

Moreover, Mr. Pishevar does not seek this discovery "for use" in a foreign proceeding, as required by statute, 28 US.C. § 1782. In the more than five years since he has been on notice of his alleged claims, Mr. Pishevar has not filed any proceedings in the UK, despite his acknowledgement before this Court that the statute of limitations on the civil claims runs in a matter of months, in August 2023, and that, at some point over the past five and half years, he could have filed the equivalent of a John Doe lawsuit. His failures to do so demonstrate that his alleged "English Proceedings" are no more than speculative.

Non-Party Fusion GPS respectfully requests that this Court quash the Subpoenas, or in the alternative, set them aside pursuant to a protective order.

## BACKGROUND

I.      **Petitioner Shervin Pishevar's** *Ex Parte* **Application and Subpoenas**

On August 6, 2021, Shervin Pishevar, a self-described "angel and venture investor," filed an *Ex Parte* Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782. *Ex Parte* Application & Mem. in Supp. of *Ex Parte* Application (ECF 1) (Pishevar Mem.) at 2. Through his *ex parte* Application, he sought a court order authorizing him to serve the Document Subpoena and the Deposition Subpoena on Fusion GPS. *See* Bento Decl., Ex. 2 (ECF 1-3). On February 17, 2023, this Court granted his *ex parte* Application, and authorized Pishevar "to serve the two subpoenas annexed as Exhibit 2 to the Declaration of Lucas Bento on Bean LLC, also known as Fusion GPS." Order (Feb. 17, 2023) (ECF 9). Mr. Pishevar effected service on Fusion GPS on February 27, 2023.

In his Application, Pishevar claims that a forged "British police report ("Forged Police Report") . . . was supplied by someone in the United Kingdom ("UK Source") to Respondent [Fusion GPS] who in turn gave it to a journalist—Mr. Marcus Baram—who used the Forged Police Report in an article published by Fast Company, a leading technology news magazine." Pishevar Mem. at 1. Pishevar alleges that the Fast Company article, published on November 8, 2017, "made reference to details contained in the Forged Police Report, including false information about the circumstances leading to the arrest" of Pishevar by City of London Police "on suspicion of sexual assault." Pishevar Mem. at 3. Pishevar also claims that Fusion GPS has "possession, custody, or control of information to identify the UK Source and provenance of the Forged Police Report, including anyone who funded or directed its creation or distribution ('Forgers')." *Id.* at 1.

Specifically, Pishevar claims that Mr. Baram met his source at a café in Washington, D.C., in September 2017, and that the source gave him the Forged Police Report as a .jpeg file on a

thumb drive. Pishevar Mem. at 4 & Ex. 8 (ECF 1-9) at 5. Mr. Baram did not identify his source to

Mr. Pishevar.[1] *See* Pishevar Mem. at 2; Macdonald Decl. (ECF 1-29) ¶ 23. According to Petitioner,

a "private investigator" named Sam Anson allegedly approached Mr. Pishevar and told him he

"had information to identify" Mr. Baram's source, "but would not disclose that information absent

a subpoena." Pishevar Mem. at 2. This approach and subsequent demand for a subpoena was

disingenuous; Mr. Anson and his firm Guidepost Solutions were doing work for, or on behalf of,

Mr. Pishevar. Ex. A, Decl. G. Simpson ¶ 11. (Notably, Mr. Pishevar's Application does not make

any mention of Mr. Anson's investigation work for or on behalf of Mr. Pishevar and instead

mischaracterizes Mr. Anson as an independent source of information.) Despite serving Mr. Anson

with a subpoena, it does not appear that Petitioner received any documents from Mr. Anson or

took his deposition, but instead received the following non-specific proffer from Mr. Anson's

attorney, in an email: "Mr. Anson has reason to believe that FusionGPS (sic) located in

Washington, D.C. provided information to Marcus Barum (sic) that was published in his article

dated November 11, 2017 (sic)." Bento Decl., Ex. 12 (ECF 1-13). This proffer did not identify

Fusion GPS as a "source" of a police report or even mention a police report. Based on this proffer,

and apparently nothing else, Mr. Pishevar filed the Section 1782 application demanding documents

and testimony from Fusion GPS allegedly for use in "Contemplated English Proceedings"—both

civil and criminal—in England against the Forgers. Pishevar Mem. at 10.

## II.    Mr. Pishevar Deposed Sam Anson *after* Serving the Subpoenas on Fusion GPS

Mr. Pishevar failed to take Mr. Anson's deposition prior to seeking leave of this Court to

serve subpoenas on Fusion GPS and prior to serving them. On March 14, 2023, *after* Fusion GPS

---

[1] Nothing in the record – including Petitioner's citation to Sam Anson's attorney proffer – supports
Petitioner's false assumption that this "source" who met Mr. Baram at a café was anyone at Fusion
GPS.

served its objections to the Document Subpoena on March 9, 2023, Mr. Pishevar took Mr. Anson's deposition. Counsel for Fusion GPS requested a copy of the deposition transcript from Mr. Pishevar's counsel. Mr. Pishevar's counsel refused to provide a copy and represented only that the "transcript only further confirms what is already stated in our application." Ex. D, Email from L. Bento to J. Levy (Mar. 16, 2023). Mr. Anson's deposition testimony was, of course, not part of Mr. Pishevar's Section 1782 Application.

After Mr. Anson's deposition, counsel for Fusion GPS spoke briefly with counsel for Mr. Anson, who represented that during the short deposition, Mr. Anson said that an individual named Mark Hollingsworth had told Mr. Anson that he had done some work for Fusion GPS related to Mr. Pishevar. This, however, is not supported by Fusion GPS's documents or its knowledge. *See* Ex. A, Decl. G. Simpson at ¶ 9.

### III.     The Subpoenas

Mr. Pishevar's Deposition Subpoena demands testimony concerning Fusion GPS's (1) "knowledge of the identity and location of the UK Source who gave you a copy of the Forged Police Report;" (2) "knowledge of the identity and location of Client who retained you to perform services related to Petitioner;" (3) "knowledge of the identify [sic] and location of any creator and disseminator of the Forged Police Report of the information contained therein." Ex. B. The Deposition Subpoena also demands information concerning four additional topics related to document procedures and practices. *Id.* The Subpoena sets March 20, 2023 as the date for the deposition. *Id.* Mr. Pishevar has agreed to hold the deposition in abeyance pending resolution of this motion to quash. *See* Ex. D, Email from L. Bento to J. Levy (Mar. 16, 2023).

Similarly, the Document Subpoena demands identifying information for the source of the Forged Police Report, the "Client," and the "Report Author":

> Document Request No. 1
>
> The identity and location of the UK Source who gave you a copy of the Forged Police Report.
>
> Document Request No. 2
>
> The identity and location of the Client who retained you to perform services related to Mr. Shervin Pishevar.
>
> Document Request No. 3
>
> Any Documents and Communications sufficient to identify the UK Source, Client, and/or Report Author.

Ex. C. The first two requests are not document requests, but interrogatories, which are improper under Rule 45. *See infra* at 12 n.6.

## IV.    Mr. Pishevar's "Contemplated" Proceedings

Mr. Pishevar claims to demand this information for use in "Contemplated English Proceedings"—both civil and criminal—in England against "the Forgers."[2] He claims to "seek[ ] to initiate, either through public or private prosecutions, criminal proceedings in England & Wales against the Forgers" and "civil proceedings against the Forgers." Pishevar Mem. at 10.

Although five and half years have passed since publication of the Fast Company article about which Mr. Pishevar complains, he has not commenced any of his "contemplated" proceedings. Despite the fact that "[u]nder English civil procedure, a complainant may initiate a civil claim against 'Persons Unknown' (similar to John Doe defendants in the United States)," Afia Decl. ¶ 35 (ECF 1-15), Mr. Pishevar has not shown that he has commenced any such "Persons Unknown" proceedings, which he could have filed without any identifying information.

---

[2] Mr. Pishevar defines "the Forgers" as "the UK Source" and those who created the Forged Police Report, "including anyone who funded or directed its creation or distribution." Pishevar Mem. at 1.

Moreover, while a footnote in a declaration from a UK lawyer (although not Mr. Pishevar's counsel) claims that "the Respondent here will not be a party to any of Petitioner's contemplated proceedings," Macdonald Decl. (ECF 1-29) at 9 n.14, Mr. Pishevar has provided no sworn declaration on that point, and in prior proceedings, Mr. Pishevar explicitly said the opposite—that he was seeking to bring proceedings against Fusion GPS in the UK. *See* Pishevar Mot. to Expedite (ECF 7) at 4 ("Petitioner's prior Section 1782 applications in New York and California—*which sought discovery to identify Respondent for use in the same contemplated foreign proceedings…*") (emphasis added). Therefore, for purposes of evaluating the propriety of Section 1782 discovery, Fusion GPS should be understood as an adverse party to Mr. Pishevar in his allegedly contemplated proceedings, which weighs in favor of quashing the Subpoenas under the court's analysis of Section 1782 proceedings. *See infra* Section III.A, at 22–23.

## V.   Mr. Pishevar's Prior Section 1782 Proceedings

This is Mr. Pishevar's fourth Section 1782 proceeding regarding the alleged "Forged Police Report." Pishevar Mem. at 10 (claiming that he has brought two Section 1782 proceedings in the U.S. District Court for the Southern District of New York, and one in the U.S. District Court for the Central District of California). He first brought Section 1782 proceedings against Fast Company, then Marcus Baram, and then, *at the request of Sam Anson,* Sam Anson.[3] Macdonald Decl. (ECF 1-29) ¶ 24.

---

[3] Mr. Pishevar alleges he filed his first Section 1782 Proceeding seeking discovery from Fast Company on August 6, 2019. *In re Shervin Pishevar Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782,* No. 19-mc-370 (S.D.N.Y., filed Aug. 6, 2019) (ECF 1-22). He next filed a Section 1782 action seeking discovery from Marcus Baram. *See In re Application of Shervin Pishevar to Take Discovery For Use In Foreign Proceedings Pursuant to 28 U.S.C. § 1782,* Case No 1:19-mc-00503 (S.D.N.Y., filed Oct. 31, 2019). He then filed a Section 1782 Proceeding seeking discovery from Sam Anson. *See In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782,* No. 2:21-mc-00175 (C.D. Cal., filed Feb. 23, 2021).

## VI.     The Instant Dispute

Four days after being served with the Subpoenas, counsel for Fusion GPS spoke with Mr. Pishevar's counsel, on March 3, 2023. Fusion GPS's counsel informed Mr. Pishevar's counsel that: (1) Fusion GPS is not aware of the identity of the "UK Source" referred to in the Document Subpoena and the Deposition Subpoena; (2) Fusion GPS is not aware of receiving a copy of the document referred to in the Subpoenas as the "Forged Police Report;" and (3) Fusion GPS does not have a copy of the document referred to in the Subpoenas as the "Forged Police." *See* Ex. D, Email from J. Levy to V. Ramos (Mar. 7, 2023). Fusion GPS's counsel offered to provide Mr. Pishevar's counsel with a sworn declaration stating as much and explained that because Fusion GPS does not know the source of alleged forged police report and is not aware of receiving an allegedly forged police report, the demands for information about any clients of Fusion GPS are irrelevant. *See id.*

By email dated March 6, 2023, counsel for Mr. Pishevar responded that they "believe that a declaration along the lines you outlined is inconsistent with the facts" but that they were "however continuing to seek instruction from our client and will revert with a definitive answer in due course." Ex. D, Email from V. Ramos to J. Levy (Mar. 6, 2023).

Counsel for Fusion GPS responded by email the next day, March 7, that, as previously explained, Fusion GPS was prepared to provide a sworn declaration that it (1) is not aware of the identity of the "UK Source" referred to in the subpoenas; (2) is not aware of receiving or sending a copy of the document referred to in the subpoenas as the "Forged Police Report." Ex. D, Email from J. Levy to V. Ramos (Mar. 7, 2023). Fusion GPS's counsel also explained:

> This is not a question of semantics. Our client has no recollection of receiving or sending any police report related to your client. Given our client's lack of information about the forged police report or its source, the subpoenas' remaining requests are irrelevant. Information about Fusion

> GPS's business or clients is not relevant because Fusion GPS does not have the information you seek about the source or author of a forged police report about Mr. Pishevar.
>
> We also note that such a declaration would not be inconsistent with the sworn facts in Mr. Pishevar's Application. It does not appear that Mr. Anson provided any sworn declaration; rather, he provided a non-specific attorney proffer, and he also voluntarily approached your client to provide this—ultimately incorrect—"information" about Fusion GPS. It also does not appear that Mr. Anson sat for a deposition.

*Id.*

The next day, March 8, 2023, counsel for Fusion GPS learned that Mr. Pishevar had just scheduled Mr. Anson's deposition for March 14, 2023. On March 15, 2023, counsel for Fusion GPS spoke with counsel for Mr. Pishevar and requested a copy of the deposition transcript. Counsel for Mr. Pishevar refused to provide the transcript. Counsel for Mr. Pishevar agreed to hold the Subpoenas in abeyance pending resolution of this Motion to Quash. Ex. D, Email from L. Bento to J. Levy (Mar. 16, 2023).

## LEGAL STANDARDS

### I.   Section 1782

28 U.S.C. § 1782 permits U.S. courts to grant discovery for use in a foreign proceeding under limited circumstances.[4] Courts may only grant an application pursuant to Section 1782 if the application meets three statutory requirements: "(1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person." *In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C.

---

[4] Motions to quash discovery authorized pursuant to section 1782 are often made and granted after a court grants an *ex parte* application and initially permits discovery. *See e.g.*, *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45 (D.D.C. 2005); *In re WildBrain Family Int'l Ltd.*, No. 19-mc-00527, 2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020).

2018). Even if these three requirements are met, however, courts have discretion to deny an application under discretionary factors originally laid out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *See In re of Lucille Holdings Pte. Ltd.*, No. 21-MC-99, 2022 WL 1421816, at *7 (D.D.C. May 5, 2022) (describing the *Intel* inquiry as whether the court "*should* order the requested relief—that is, whether to exercise its discretion to do so") (emphasis in original). In applying this discretionary analysis, courts consider: "(1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to 'circumvent foreign proof-gathering restrictions or other policies,' and (4) whether the request is 'unduly intrusive or burdensome.'" *Id.* (quoting *Intel*, 542 U.S. at 264–65).

## II.    Rule 45 Subpoenas

Additionally, discovery sought under Section 1782 must comply with the Federal Rules of Civil Procedure, including Rules 26 and 45. *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010) ("Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)."). "Rule 45 subpoenas may only be used to compel production of information that is discoverable under Rule 26." *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 42 (D.D.C. 2017). A subpoena is not enforceable to the extent that it seeks deposition testimony regarding matters that are not "relevant to any party's claim or defense and proportional to the needs of the case." *Id.* (citing Fed. R. Civ. P. 26(b)(1)). Federal Rule of Civil Procedure 45(d)(3)(A) also requires a court to quash or modify a subpoena where the subpoena: "[1] "fails to allow a reasonable time to comply; [2] requires a person to comply beyond the geographical limits specified in Rule 45(c); [3] requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [4] subjects a person to undue burden."

### III.     Protective Order

A party may also seek "a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure of discovery." Fed. R. Civ. P. 26(c)(1). Finally, and more generally, courts should not "'tolerate fishing expeditions, discovery abuse, and an inordinate expense involved in overbroad and far-ranging discovery requests.'" *Buie v. District of Columbia*, 327 F.R.D. 1, 10 (D.D.C. 2018).

### ARGUMENT

The Court should quash the Subpoenas for three reasons: (1) the Subpoenas are not proportional to the needs of the case, unduly burden Respondent, and seek irrelevant information, in violation of the Federal Rules of Civil Procedure; (2) the Subpoenas demand discovery that is not for use in a foreign proceeding, and thus does not meet the statutory requirements of Section 1782(a); and (3) the Subpoenas violate the principles of Section 1782 because they are unduly burdensome and intrusive, designed to circumvent the proof-gathering limitations in the proposed English proceedings, and demand information from an entity that Mr. Pishevar has repeatedly threatened to sue in the foreign proceeding.[5]

### I.     THE SUBPOENAS SHOULD BE QUASHED BECAUSE FUSION GPS DOES NOT KNOW THE UK SOURCE'S IDENTITY OR LOCATION AND DOES NOT HAVE INFORMATION ABOUT THE FORGED POLICE REPORT.

Because Fusion GPS does not have the information sought in the Subpoenas—*i.e.*, the identity and location of the UK Source and information about any author of the Forged Police

---

[5] Additionally, the Subpoenas served upon Fusion GPS are not identical to those approved by the Court, and thus, violate the Court's Order. *Compare* Bento Decl., Ex. 2 (ECF 1-3) *with* Subpoenas (Exs. B & C) (both the compliance date and the date of publication for Marcus Baram's article were changed in the Subpoenas served upon Fusion GPS). *See* Order (Feb. 17, 2023) (ECF 9) (authorizing Petitioner to "serve the two subpoenas annexed as Exhibit 2 to the Declaration of Lucas Bento on Bean LLC").

Report or the report itself—enforcement of these Subpoenas imposes an undue burden on Fusion GPS and they should be quashed.

**A. Fusion GPS Does Not Have Possession, Custody, or Control of the Requested Documents.**

As an initial matter, as to the Document Subpoena, Respondent does not possess, have custody of, or control documents capable of identifying or locating the UK Source, because Fusion GPS does not know the identity of the UK Source. Ex. A, Decl. G. Simpson ¶ 5. Nor does Respondent possess, have custody of, or control a "Forged Police Report," or any police report regarding Mr. Pishevar, and it does not recall sending or receiving any police report regarding Mr. Pishevar. *Id.* ¶¶ 6-8. A party "[o]bviously . . . is not obliged to produce anything that is not in [its] possession, custody, or control." *Doe v. District of Columbia*, 231 F.R.D. 27, 35 (D.D.C. 2005); Fed. R. Civ. P. 34(a)(1).[6] Petitioner's Document Subpoena should be quashed accordingly.

**B. The Subpoenas Impose an Undue Burden on Fusion GPS.**

The Subpoenas should be quashed as they impose an undue burden on Fusion GPS, which does not know the identity or location of the UK Source, does not recall sending or receiving any "Forged Police Report," and has no knowledge of hiring Mark Hollingsworth to do work related to Mr. Pishevar, or of discussing either Mr. Pishevar or a police report with Mr. Hollingsworth.

---

[6] Document Request Nos. 1 and 2, Ex. C, improperly request Respondent to provide information *not* documents. In its Document Subpoena, Petitioner seeks the identity and location of the UK source and Respondent's client rather than documents or communications sufficient to provide such information. Petitioner has not received permission from this Court to propound interrogatories, nor does Federal Rule of Civil Procedure 45 permit such discovery via a subpoena for documents. These Requests should be set aside for this reason as well. *See* Pishevar Application (ECF 1) at 1 (seeking a Court order authorizing service of "the attached subpoenas *duces tecum* and *ad testificandum*"); Fed. R. Civ. P. 45(a)(1)(A)(iii) ("Every subpoena must: . . . command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises").

Ex. A, Decl. G. Simpson ¶¶ 4-9. Enforcing the Subpoenas would provide no benefit to Petitioner but would impose great costs on Fusion GPS.

### i.     The Subpoenas Must Be Quashed under Rule 45(d)(3)(A)(iv).

Federal Rule of Civil Procedure 45 "requires that district courts quash subpoenas that . . . would cause an undue burden." *Buzzfeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *Watts v. Sec. Exchange Comm.*, 482 F.3d 501, 508 (D.C. Cir. 2007)). The D.C. Circuit "has admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to compel (or quash) pursuant to Rule 45, reminding [courts] to consider 'whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (quoting *Watts,* 482 F.3d at 508). Courts may "limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26." *Id.* Fusion GPS has already incurred legal expenses in moving to quash these fishing expeditions launched by Petitioner. Requiring Fusion GPS to further engage in this discovery process when it has no information relevant to the discovery requests contained in the Subpoenas would surely impose significant expenses upon Fusion GPS, amplifying the undue burden it already has experienced.

Indeed, for deposition subpoenas to an organization, courts have found they impose an undue burden on a nonparty organization that does not employ a knowledgeable person within a reasonable distance of the district. *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 239 (D.D.C. 2013) ("this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district."); *Price Waterhouse LLP v. First Am. Corp.,* 182 F.R.D. 56, 62–63 (S.D.N.Y. 1998) (quashing

subpoena where the knowledgeable employees of the subpoenaed party did not "reside," were not "employed," and did not "regularly transact[ ] business in person" in the court's jurisdiction); *Wultz v. Bank of China*, 293 F.R.D. 677, 679–81 (S.D.N.Y. 2013) (same); *Sokolow v. Palestine Liberation Org.*, No. 04 Civ. 397, 2012 WL 3871380, at *4 (S.D.N.Y. Sept. 6, 2012) (same). Fusion GPS does not have *any* current or former employee, let alone one within a reasonable distance of the district, who has knowledge of the identity or location of the UK Source or knowledge about the alleged police report. It follows that requiring Respondent to identify a Rule 30(b)(6) deponent to sit for a time-consuming deposition on information of which no person at the organization has knowledge unduly burdens Respondent, requiring this Court to quash the subpoena.[7] *Wultz*, 293 F.R.D. at 680 ("in the case of nonparties subpoenaed pursuant to Rule 45, a corporation's duty to respond to a subpoena is subject to the requirements of Rule 45(c)(1) and 45(c)(3)(A)(iv), which mandate that a court must quash a subpoena that subjects a person to 'undue burden'").

For similar reasons, the Document Subpoena imposes an undue burden on Fusion GPS, because it demands documents that Fusion GPS does not have. *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339–40 (D.D.C. 2021) (finding a document subpoena imposed an undue burden where less burdensome alternatives existed and where respondent averred it did not have documents that would support petitioner's theory); *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51–52 (D.D.C. 2005) (finding a document subpoena for irrelevant documents would impose an undue burden on nonparty).

---

[7] Because Fusion GPS does not have information about the identity or location of the UK Source, or the origins of any alleged forged police report about Mr. Pishevar, the remaining deposition topics about a "Client who retained you to perform services related to Petitioner" and its document retention polices are irrelevant. *See infra* at 17–18.

ii.     **The Subpoenas Demand Discovery That Is Not Proportional to the Needs of the Case, in violation of FRCP 26(b)(1).**

Federal Rule of Civil Procedure 26(b)(1) requires discovery to be proportional to the needs of the case, considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Where there is slight or slim benefit, courts have found the requested discovery in violation of Rule 26. *Diamond Servs.*, 339 F.R.D. at 339–40 (citing Rule 26(b)(1) and finding "[t]he slim chance of a 'likely benefit' from enforcing these subpoenas further weighs against granting Petitioner's motion [to compel]."). Accordingly, since discovery would provide no benefit to Petitioner and would impose costs and burden on Respondent, the Court should quash the Subpoenas as not proportional to the needs of the case.

Permitting discovery where Respondent has no knowledge of the relevant deposition topics would essentially sanction a "wholesale fishing expedition." *Diamond Servs.*, 339 F.R.D. at 339–40 (citing Rule 26(b)(1) and finding petitioners' subpoenas were fishing expeditions where respondents denied, in pleadings and at meet and confers, petitioners' theory regarding the identity of anonymous clients and where less burdensome alternatives were available). Because "[d]iscovery under these circumstances would amount to a 'fishing expedition,' and, because the burden associated with [complying with the subpoena] would outweigh its likely benefit, [Petitioner is] not entitled to it." *Great Am. Ins. Co. of New York v. TA Operating Corp.*, No. 96 Civ. 13230, 2008 WL 1848946, at *6 (S.D.N.Y. April 24, 2008)). *See also Shannon v. Albertelli Firm, P.C.*, 610 Fed. App'x 866, 871 (11th Cir.) ("Shannon's discovery requests were simply a 'fishing expedition' whose burdens or expenses 'outweigh[ed] [their] likely benefit.' As a result, we cannot say that the court abused its discretion in denying discovery.") (alterations in original).

When evaluating the burden of discovery under Rule 26(b)(1), courts must additionally consider "whether the discovery sought is obtainable from some other source that is more

convenient, less burdensome, or less expensive." *Diamond Servs.*, 339 F.R.D. at 339  (citing *Watts*, 482 F.3d at 509). Mr. Pishevar has several "less burdensome" alternatives to deposing a designated witness who will not have the information he seeks and demanding documents that Fusion GPS does not have. First, Mr. Pishevar previously filed a Section 1782 application for the discovery of information from Sam Anson, who had (supposedly) voluntarily contacted Mr. Pishevar to provide information before any application was filed against him, in early 2021. Pishevar Mem. at 12. In response to the subpoena, Mr. Anson's attorney stated in an email to Mr. Pishevar's counsel that "Mr. Anson has reason to believe that FusionGPS (sic) located in Washington, D.C. provided information to Marcus Barum (sic) that was published in his article dated November 11, 2017 (sic)." Bento Decl., Ex. 12 (ECF 1-13). Mr. Pishevar does not state that Mr. Anson provided any factual basis for this accusation; nor does Mr. Pishevar point to any evidence that he followed up with Mr. Anson's counsel with additional questions concerning the factual basis for this assertion or that he deposed Mr. Anson. It also does not appear that Mr. Pishevar attempted to ascertain whether Mr. Anson has any knowledge of a forged police report or the identity and location of the UK Source. It was only after Fusion GPS indicated that it would be resisting the Subpoenas that Mr. Pishevar scheduled and took a deposition of Mr. Anson. However, Mr. Pishevar's counsel refused to provide the transcript of this deposition to Fusion GPS's counsel, so it is not known to what extent Mr. Pishevar probed Mr. Anson's knowledge of the identity of the UK Source or his knowledge of a forged police report. Moreover, Mr. Pishevar's counsel failed to pursue this deposition *before* petitioning this Court under Section 1782 and subjecting Fusion GPS to the burden of these Subpoenas.

And second, Petitioner has retained UK counsel, *see* Afia Decl. (ECF 1-15) ¶ 46 & Macdonald Decl. (ECF 1-29) ¶ 25, but has apparently not used UK proceedings to find what he

claims is a UK source. Instead, he has filed numerous proceedings in US courts to identify someone

in the UK. Any burden "these [ ] alternatives impose on Petitioner[ ] is outweighed by the more

serious 'unwanted burden thrust upon' the non-party Respondent[ ] in the instant action." *Diamond*

*Servs.*, 339 F.R.D. at 340 (quoting *Watts*, 482 F.3d at 509).

### C.   The Subpoenas Seek Information and Documents Not Relevant to Mr. Pishevar's "Contemplated" Proceedings.

Given Respondent's lack of knowledge sufficient to locate or identify the UK Source,

Deposition Topics 2, 4, and 5, and Document Requests Nos. 2 and 3 as they relate to any client of

Respondent are irrelevant and in violation of Federal Rule of Civil Procedure 26(b)(1).

Deposition Topic 2 seeks information relating to the identity and location of Respondent's

client who allegedly "retained" Respondent to "perform services related to Petitioner." Ex. B.

Because Fusion GPS cannot identify or locate the UK Source and does not have knowledge of the

Forged Police Report, information regarding any of Fusion GPS's clients does not "bear on" nor

could it "reasonably . . . lead to other matter that could bear on, any issue that is or may be in the

case." *Wall v. Reliance Std. Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022). "'[T]he relevancy

standard of Rule 26 is not without bite,' and will not allow parties to 'explore matter which does

not presently appear germane on the theory that it might conceivably become so.'" *Id.* (quoting

*Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012–13 (D.C.

Cir. 1997)). Document Requests No. 2 and 3 also seek information about the identity and location

of "the Client," Ex. C, which is likewise irrelevant, given Respondent's lack of knowledge about

the Forged Police Report or its source.

Fusion GPS's document retention policies and "electronic preservation and storage

systems" are also irrelevant. Deposition Topics 4 and 5 seek information relating to Respondent's

"[p]rocedures, practices, and policies concerning Document retention" and Respondent's

"information systems" that preserve or store "information relating to any of the Deposition Topics." Ex. B. Given that Fusion GPS does not know the "UK Source" or "Report Author," and does not have a police report concerning Mr. Pishevar, information about its document retention policies is not relevant to the claims Mr. Pishevar claims to want to pursue.

## II.      THIS COURT LACKS STATUTORY AUTHORITY TO GRANT THE APPLICATION BECAUSE THE DISCOVERY SOUGHT IS NOT "FOR USE IN A FOREIGN OR INTERNATIONAL TRIBUNAL."

Mr. Pishevar has not shown that the UK proceedings were "within reasonable contemplation" at the time the Application was filed, *Intel*, 542 U.S. at 259, and therefore his Application does not meet the requirements of Section 1782 that the requested discovery "be for use in a proceeding before a foreign or international tribunal." 28 U.S.C. § 1782.

The foreign proceedings need not be "pending" or "imminent," *Intel*, 542 U.S. at 259, but an applicant "must provide 'some objective indicium that the action is being contemplated' and will be brought within a reasonable time," *In re of Lucille Holdings*, 2022 WL 1421816, at *13 (quoting *Certain Funds, Accts. and/or Invest. Vehicles v. KPMG, LLP*, 798 F.3d 113, 123 (2d Cir. 2015)). This inquiry is "fact-specific" and must establish that the "proceeding is more than speculative." *Id.* (quoting *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 102 (2d Cir. 2020)). "At a minimum, a § 1782 applicant must present to the district court *some concrete basis* from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 124 (emphasis added) (holding that prospective proceedings were not within reasonable contemplation where the applicant had merely retained counsel and was discussing the possibility of initiating litigation).

First, Mr. Pishevar's actions indicate his Section 1782 proceeding is just another effort to determine *whether* to bring proceedings in the UK and is not actually to obtain discovery "for use"

in a contemplated foreign proceeding. "[F]acts indicating that at the time the application was filed, the discovery was sought in order to determine whether litigation could or should be pursued are insufficient to meet the 'reasonable contemplation' standard." *In re of Lucille Holdings*, 2022 WL 1421816, at *13. *See also Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015) (finding requested discovery was not "for use" in a foreign proceeding because "[t]he only thing that the contemplated § 1782 discovery would assuredly be 'in aid' of is [applicant's] decision-making, and the statute is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings."). The purpose of requiring a showing of reasonable contemplation is to prevent precisely "the sort of fishing expeditions unsanctioned by the Federal Rules of Civil Procedure" that Mr. Pishevar seeks here. *In re of Lucille Holdings*, 2022 WL 1421816, at *10. The requirement "also helps prevent an applicant from using a pending section 1782 application as leverage to extract information from a target when the applicant is still investigating whether it might have a viable cause of action in a foreign jurisdiction." *Id.*

Mr. Pishevar claims that "the declarations of Petitioner's English lawyers that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings is objective evidence that Petitioner's 'foreign proceeding' is 'within reasonable contemplation.'" Pishevar Mem. at 18. But Petitioner's burden "is not satisfied simply "because the petitioner has retained counsel and is discussing the possibility of initiating litigation." *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015) (citing *Certain Funds*, 798 F.3d at 122–24). And Mr. Pishevar's claim is especially suspect because he has presented the same (word-for-word) "evidence" of reasonable contemplation since he filed his first Section 1782 application in 2019, nearly three and half years ago. *See* Pishevar Mem. in Supp. of

App., No. 19-mc-370 (S.D.N.Y., filed Aug. 6, 2019) (ECF 3) at 15 (also stating that "the declarations of Petitioner's English lawyers that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings is objective evidence that Petitioner's 'foreign proceeding' is 'within reasonable contemplation.'"). Surely, where Petitioner cannot show any objective progress on the allegedly contemplated proceedings over the course of years, he fails to meet the "within reasonable contemplation" standard.

That Mr. Pishevar has not filed any proceedings in the UK despite his acknowledgment that the statute of limitations will soon expire also shows that his Application does not meet the "for use" requirement of Section 1782. Mr. Pishevar has had nearly six years to file proceedings in England. During this time, Petitioner has filed three other Section 1782 applications, all the while claiming that proceedings were "contemplated" in England, but never actually commencing such "contemplated" proceedings—even though the statute of limitations will expire in August of 2023. Afia Decl. (ECF 1-15) ¶ 55; Pishevar Mot. to Expedite (ECF 7) at 4 (claiming that "the statute of limitations on Petitioner's English civil claims expires in August 2023"). Petitioner's declarant Jenny Campbell Afia stated that English civil procedure permits a complainant to "initiate a civil claim against 'Persons Unknown' (similar to John Doe defendants in the United States)." Afia Decl. ¶ 35. Therefore, since 2017, Petitioner could have filed a Persons Unknown civil claim if indeed he intended to file UK proceedings. Instead, Petitioner has abused Section 1782 applications, employing them like pre-lawsuit discovery that would not be permitted in the U.S. This pattern demonstrates that Mr. Pishevar's allegedly "contemplated" foreign proceedings are not within "reasonable contemplation" and are not "more than speculative." *In re of Lucille Holdings*, 2022 WL 1421816, at *13. *See also Millennium TGA*, 286 F.R.D. at 16 ("[T]he federal

courts, and its subpoena power, are not to be used to gather information that is only relevant to invalid claims, for that is tantamount to a fishing expedition.").

Second, the criminal proceedings referenced by Petitioner are entirely speculative. Both "State prosecutions" and "private prosecutions" rely on the actions of a third-party, government entity prior to the commencement of criminal proceedings. Macdonald Decl. (ECF 1-29) ¶¶ 35 & 37. State prosecutions require the approval of a Crown Prosecutor who is mandated not only to analyze whether there is a realistic prospect of conviction, but also to make the subjective determination as to whether prosecuting would "be in the public interest." *Id.* ¶ 35. Likewise, private prosecutions require a magistrate court to grant a criminal summons before any criminal case can proceed. *Id.* ¶¶ 37–38.[8] Indeed, obtaining a criminal summons in a private prosecution does not occur as of right; rather, magistrate judges may reject an application for summons if "there are compelling reasons . . . to do so – most obviously that the application is vexatious (which may involve the presence of an improper ulterior purpose and/or long delay); or is an abuse of process; or is otherwise improper." *R (on the application of Kay and another) v. Leeds Magistrates' Court and Another* [2018] EWHC 1233, ¶ 22(Admin)[9] ("the magistrate should consider the whole of the relevant circumstances to enable him to satisfy himself that it is a proper case to issue the summons and, even if there is evidence of the offence, should consider whether the application is vexatious, an abuse of process, or otherwise improper."). Accordingly, determining whether a criminal proceeding in the UK is "within reasonable contemplation" hinges on speculating whether a prosecutor or a court would permit criminal proceedings to commence. No legal expert, law firm,

---

[8] *See also Research and analysis: Private Prosecutions*, GOV.UK (Feb. 22, 2022), https://www.gov.uk/government/publications/private-prosecutions/private-prosecutions

[9] *Available at* http://www.bailii.org/cgi-bin/format.cgi?doc=/ew/cases/EWHC/Admin/2018/1233.html&query=(%5b2018%5d)+AND+(EWHC)+AND+(1233)

or analysis of potential claims can remove this speculation. Since a contemplated proceeding must be "more than speculative" to meet the statutory requirement under Section 1782, the alleged criminal proceedings here may not be basis for which this Court permits discovery under the application.

### III.     THE SUBPOENAS VIOLATE THE PRINCIPLES OF SECTION 1782

The Court should quash the Subpoenas because at least three of the four discretionary *Intel* factors weigh against Petitioner's Section 1782 application. *See Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so").

### A.  Evidence Indicates Respondent Is a Contemplated Participant in Foreign Proceedings.

The first *Intel* factor, whether the respondent is a participant in the foreign proceeding, weighs in favor of quashing a subpoena where the respondent is likely to be a participant in the foreign proceeding. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005) ("the Supreme Court has stated that 'when the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.") (quoting *Intel*, 542 U.S. at 244); *In re Zouzar Bouka; Vision Indian Ocean S.A.*, No. 22 Misc. 92, 2022 WL 15527657, at *12-13 (S.D.N.Y. Oct. 28, 2022) (finding the first *Intel* factor "counsel[ed] heavily against granting the application" where the respondent was likely to be party in the contemplated foreign proceedings). This is because participants in the foreign proceeding would be subject to the foreign court's jurisdiction, thereby making the petitioner's need for the

application less apparent. *Matter of Hranov*, No. 21-mc-751, 2022 WL 1261827, at *7 (S.D.N.Y. April 28, 2022).

Mr. Pishevar's Application and one of his experts note that Fusion GPS will not be a participant in the contemplated English proceedings.[10] Pishevar Mem. at 22; Macdonald Decl. (ECF 1-29) at 9 n.14. But Mr. Pishevar's other filed statements say otherwise. Indeed, Mr. Pishevar admitted in his Motion to Expedite in the instant proceeding that his "prior Section 1782 applications in New York and California . . . sought discovery to identify Respondent for use in the same contemplated foreign proceedings and in relation to these exact same facts at issue here." Pishevar Mot. to Expedite (ECF 7) at 4. *See In re Zouzar Bouka*, 2022 WL 15527657, at *12-13 (finding that the first *Intel* factor weighed against petitioner because even though petitioner's opening brief asserted that one of the respondents would not be a participant in the contemplated proceedings, the brief later directly contradicted that claim). Furthermore, Petitioner has elsewhere provided evidence that Respondent would be a participant in the "contemplated" proceedings.[11]

---

[10] "[I]f a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation." *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (internal quotation marks omitted). Notably, if the Court permits Petitioner to depose a representative of Respondent, and Petitioner later sues Respondent in UK proceedings, Respondent has little recourse for what would be Petitioner's false representation to this court.

[11] In prior proceedings, Mr, Pishevar filed statements that contradict his expert's representation to this Court that Mr. Pishevar does not intend to bring proceedings against Fusion GPS. *See* Decl. Macdonald ¶ 23, No. 19-mc-00503 (S.D.N.Y., filed Oct. 31, 2019) (ECF 6) ("It is my understanding that Hickman & Rose, as counsel to Mr. Pishevar, is planning to initiate a criminal action against Source 1 [Fusion GPS] and/or Source 2 as well as the author of the Fake Report (which may be Source 1 and/or Source 2) in line with the offences I identify below."); Decl. C. Watson ¶ 40, No. 19-mc-00503 (S.D.N.Y., filed Oct. 31, 2019) (ECF 7) ("the Petitioner intends to bring proceedings against Source 1 [Fusion GPS] and/or Source 2 in libel and/or slander on the following basis."); Pishevar Application, No. 19-mc-00503 (S.D.N.Y., filed Oct. 31, 2019) (ECF 4) at 1, 13; Pishevar Application, No. 2:21-mc-00175 (C.D. Cal., filed Feb. 23, 2021) (ECF 1-1) at 1 & 10 ("Petitioner contemplates initiating criminal and civil proceedings against the Forgers in the United Kingdom" and defining "Forgers" as including the "D.C. Source," i.e., who Mr. Pishevar now claims is Fusion GPS).

**B.   The Deposition Subpoena Would Circumvent Foreign Proof-Gathering Rules.**

The third *Intel* factor counsels a district court to deny Petitioner's application if it is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 264–65; *see In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010) (finding the third *Intel* factor weighed against the 1782 applicant where the applicant side-stepped discovery guidelines that required the applicant to ask the tribunal to obtain discovery on behalf of the parties).

Here, deposition testimony is inconsistent with English "proof-gathering" policies and restrictions. *In re WildBrain Fam. Int'l Ltd.*, No. 19-MC-527 (JPO), 2020 WL 6135765, at *2 (S.D.N.Y. Oct. 19, 2020) ("The 'nature' and 'character' of the UK proceedings are not such that they include live pretrial testimony, but only witness statements. The Court concludes in its discretion that live testimony by Raine, a nonparty to the UK litigation, is not warranted."); *see also* Decl. of Mair Williams, *In re WildBrain Fam. Int'l Ltd.*, No. 19-mc-00527 (ECF 22 at ¶12) (S.D.N.Y. Jan. 29, 2020) ("[W]itness statements . . . are the closest thing to deposition testimony in English proceedings[.] Depositions are not a procedure recognized by the English Court."). Thus, the third *Intel* factor weighs in favor of granting the Motion to Quash.

**C.   The Subpoenas are Unduly Intrusive or Burdensome**

The fourth *Intel* factor, whether the request is "unduly intrusive or burdensome," weighs in favor of quashing Petitioner's subpoena for the same reasons described in Section I. *See supra* 11–18.

## CONCLUSION

Accordingly, Respondent respectfully requests this Court quash Petitioner's Subpoenas or in the alternative issue a protective order setting aside the Subpoenas, and order Mr. Pishevar to pay Fusion GPS's fees and costs associated with responding to these Subpoenas.

Dated:  March 29, 2023                     By:     */s/ Rachel M. Clattenburg*

Joshua A. Levy (D.C. Bar No. 475108)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
Justin A. DiCharia (D.C. Bar No. 1671109)
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Suite 1200
Washington, DC 20006
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
jdicharia@levyfirestone.com

*Counsel for Fusion GPS*

25