**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHERVIN PISHEVAR,

          Petitioner,

   v.

FUSION GPS,

          Respondent.

Case No. 21-mc-105-ABJ-MJS

## <u>MEMORANDUM OPINION</u>

Through this miscellaneous case, Petitioner Shervin Pishevar ("Pishevar") is in pursuit of discovery from Bean LLC d/b/a Fusion GPS ("Fusion GPS") that Pishevar says he plans to use in legal proceedings in the United Kingdom. Pursuant to 28 U.S.C. § 1782, former Magistrate Judge Meriweather previously granted Pishevar's *ex parte* application to issue two subpoenas to Fusion GPS, one seeking documents and another seeking deposition testimony. Following service, however, Fusion GPS moved to quash or, in the alternative, for a protective order. (ECF No. 12.) Fusion GPS principally argues that the subpoenas impose an undue burden and seek information that is irrelevant, at least in part, to the contemplated proceedings. Separately, Fusion GPS advances a few arguments as to why the subpoenas supposedly should not have been approved under Section 1782 in the first place. The matter is fully briefed, and the Court recently held a hearing to consider arguments from counsel. For the reasons below, the Court will **GRANT IN PART** and **DENY IN PART** Fusion GPS's motion, limiting a few categories of documents and testimony sought by the subpoenas but otherwise requiring Fusion GPS to respond.[1]

---

[1] This case is referred to the undersigned pursuant to Local Civil Rule 72.2(a). (Nov. 25, 2024 Min. Order.)

# BACKGROUND

The salient history surrounding these proceedings was aptly summarized in Judge Meriweather's prior ruling authorizing the contested discovery, *In re Pishevar*, 2023 WL 2072454 (D.D.C. Feb. 17, 2023), so the Court provides only a high-level recap here.

In May 2017, Pishevar was arrested in London on suspicion of sexual assault, but he was released and never charged. Several months later, in November 2017, reporter Marcus Baram wrote an article about Pishevar's arrest and the apparent charges for a publication called *Fast Company*. The article discussed and relied upon a police report that turned out to be fake. The parties refer to that document as the "Forged Police Report." Baram apparently obtained the Forged Police Report from someone in Washington, D.C., who in turn claimed to have received it from a "male lawyer based in the UK." The parties refer to the latter individual as the "UK Source."

According to Pishevar, he contemplates filing civil and criminal charges in England against the UK Source based on the dissemination of the Forged Police Report. For the last several years, Pishevar has been in search of "identifying information about the UK Source and others involved in the creation and distribution of the Forged Police Report." (ECF No. 1 ("Appl.") at 8.)[2] This case, in fact, represents the fourth federal court proceeding Pishevar has initiated under 28 U.S.C. § 1782 in pursuit of that information. He started with two cases in the U.S. District Court for the Southern District of New York, seeking discovery from *Fast Company* and Baram, respectively.[3] Those cases were sidelined for some time based on Baram's invocation of the reporter's privilege to shield the identity of his source. Then, before the privilege issue was fully resolved, Pishevar

---

[2] Page citations to the parties' briefing refer to the ones assigned by the Court's electronic filing system.

[3] *In re Shervin Pishevar Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, No. 1:19-mc-370 (S.D.N.Y. Aug. 6, 2019); *In re Shervin Pishevar Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, No. 1:19-mc-503 (S.D.N.Y. Oct. 31, 2019).

learned that a private investigator named Sam Anson claimed to have information about the UK Source, which he was apparently unwilling to share absent a subpoena. So Pishevar filed a third Section 1782 application in the U.S. District Court for the Central District of California seeking discovery from Anson.[4] The application was granted in May 2021, and the resulting information from Anson reportedly led Pishevar to Fusion GPS.

Enter the present proceedings. Pishevar filed a Section 1782 petition (now his fourth overall) here in August 2021, seeking discovery from Fusion GPS based on a contention that the Forged Police Report was "supplied by someone in the United Kingdom [*i.e.,* the UK Source] to [Fusion GPS] who in turn gave it to … Mr. Marcus Baram[.]" (Appl. at 1.) In February 2023, former Magistrate Judge Meriweather granted Pishevar's application on an *ex parte* basis—which is not uncommon in these sorts of proceedings—and authorized service of two subpoenas on Fusion GPS under Section 1782. *In re Pishevar*, 2023 WL 2072454, at *1–4. Judge Meriweather appropriately recognized that the subpoenas might yet be "quashed on motion from Fusion GPS" following service. *Id.* at *4. And Fusion GPS soon took that approach.

But first, Fusion GPS tried to work things out with Pishevar. Fusion GPS's counsel advised Pishevar's counsel that Fusion GPS was "not aware of the identity of the UK Source," was "not aware of receiving a copy of the … Forged Police Report," and "does not have a copy of the … Forged Police Report." (ECF No. 12 ("Mot.") at 13.) Fusion GPS, moreover, offered to provide a sworn declaration to this effect, but Pishevar rebuffed that overture as being "inconsistent with the facts." (*See id.*) In response, Fusion GPS's counsel impugned the information Pishevar received from Anson because it was passed informally through counsel versus in a sworn declaration or a

---

[4] *In re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 2:21-mc-175-JAK-KS (C.D. Cal. Feb. 23, 2021).

deposition. Pishevar, seemingly in response, then deposed Anson, and Pishevar's counsel insisted that Anson's testimony supported that Fusion GPS was involved with the Forged Police Report and the UK Source. But for whatever reason, counsel for Pishevar refused to share a transcript of the deposition (which has since been filed on the docket) with Fusion GPS at that time.[5]

Unable to resolve matters, Fusion GPS pressed forward with its motion, and the parties agreed among themselves to hold the subpoenas in abeyance until the Court could rule. Fusion GPS's motion was accompanied by a sworn declaration from Fusion GPS principal, Glenn Simpson, which essentially tracked the prior representations made by counsel—*i.e.*, Fusion GPS apparently knows nothing and has nothing responsive to the subpoenas. (*See* ECF No. 12-2.) Pishevar opposed the motion, and Fusion GPS filed its reply. (ECF No. 18-1 ("Opp'n"); ECF No. 17 ("Reply").) Fusion GPS filed a supplemental declaration from Mr. Simpson, which provided slightly more detail about the apparent efforts he undertook before making the representations in his original declaration. (ECF No. 17-1.) Shortly thereafter, Pishevar moved for leave to file a two-paragraph supplemental declaration from Baram, ostensibly in response to "Fusion GPS's attacks on Mr. Anson's integrity and character." (ECF Nos. 20, 20-2.)[6] That spawned a new round of contentious briefing. (ECF Nos. 21, 22.)

This matter was recently reassigned to the undersigned. The Court held a hearing on the pending motions on February 19, 2025, at the conclusion of which the Court encouraged the parties to take another shot at reaching agreement. The parties filed a status report on February 28, 2025 (ECF No. 25), advising that they could not resolve the matter. This ruling now follows.

---

[5] Pishevar initially filed the deposition transcript under seal (ECF No. 15-3), but he subsequently moved to withdraw that request, and the transcript is now publicly viewable on the Court's docket. (ECF No. 18-2.)

[6] The substantive portions of Baram's proposed declaration read, in full: "I have talked to Sam Anson on multiple occasions. I consider Mr. Anson to be a person of honesty and integrity." (ECF No. 20-2.)

## ANALYSIS

Fusion GPS mounts two overall challenges to Pishevar's subpoenas. First, Fusion GPS says the subpoenas should be quashed on multiple grounds under the broad principles governing civil discovery generally—*i.e.*, Rules 26 and 45 of the Federal Rules of Civil Procedure. Second, Fusion GPS argues the subpoenas should be invalidated under the more specific rules governing discovery for use in foreign proceedings under 28 U.S.C. § 1782, insisting for a few reasons that there was no proper basis for their issuance at all. The Court considers each challenge in turn.

## I.    Fusion GPS's Motion to Quash

Fusion GPS first asks the Court to quash the subpoenas because they impose an undue burden and seek information that is supposedly irrelevant to the contemplated proceedings.

"Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under [Section] 1782(a)." *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010). Under the Rules, "[t]hird-party subpoenas are governed by Federal Rule of Civil Procedure 45," *In re Info. Tech. Mgmt. Servs. Inc.*, 2025 WL 27156, at *3 (D.D.C. Jan. 3, 2025), and "Rule 45 subpoenas may only be used to compel production of information that is discoverable under Rule 26," *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 42 (D.D.C. 2017). In other words, the limiting principles and protections that apply generally to third-party subpoenas under Rule 26 and Rule 45 likewise apply to third-party subpoenas requested for use in foreign proceedings under Section 1782(a). Fusion GPS invokes those principles and protections here.

### A.    The Subpoenas Do Not Impose An Undue Burden

Fusion GPS argues that the subpoenas "should be quashed as they impose an undue burden on Fusion GPS." (Mot. at 16–23.) As the one resisting discovery, Fusion GPS shoulders the responsibility to demonstrate that the subpoenas would "subject [it] to undue burden." Fed. R. Civ.

P. 45(d)(3)(A)(iv); *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023). On the record before the Court, it comes up short.

Fusion GPS's overarching argument on this point is that, because it "does not have the information sought," the subpoenas "impose an undue burden upon Fusion GPS." (Mot. at 1; *see also id.* at 16–17 (same).) Of course, a subpoena only requires production of information or documents within the responding party's "possession, custody, or control," Fed. R. Civ. P. 45(a)(1)(A)(iii), so a subpoenaed party cannot be expected to produce what it does not have. "But reporting that [one] does not have requested records in its possession, custody, or control is the stuff of a written response" to the subpoena, "not a basis to quash" altogether. *Nasufi v. King Cable, Inc.*, 2017 WL 3334110, at *7 (N.D. Tex. Aug. 4, 2017); *see also Rhodes v. Pfeiffer*, 2017 WL 11602540, at *3 (C.D. Cal. July 14, 2017) (denying motion to quash subpoena on this basis because a responding party's reported "lack of possession, custody, or control" does not "prevent it from responding to the [s]ubpoena"); *Allstate Ins. Co. v. A & F Med. P.C.*, 2016 WL 7116067, at *4 (E.D.N.Y. Dec. 6, 2016) ("To the extent that the subpoenaed documents are not within his possession, custody, or control, [the recipient] will not be burdened by responding[.]"). Fusion GPS remains free to *respond* to the subpoenas by saying—if true—that it does not have possession, custody, or control of the information requested. But Fusion GPS's reported lack of information does not, in and of itself, justify *quashing* the subpoenas as unduly burdensome.

Fusion GPS cites two cases—*N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005), and *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Loson & Bear, LLP*, 339 F.R.D. 334 (D.D.C. 2021)—to argue that the document subpoena imposes an undue burden by "demand[ing] documents that Fusion GPS does not have." (Mot. at 19.) Neither helps.

First, in *Leake*, the court quashed subpoenas that sought information about the business and financial relationships of various non-parties that filed amicus briefs in other litigation. But the court did not base its ruling on the fact that the subpoenaed parties did not have the information requested. Rather, along with finding the information irrelevant, the court quashed the subpoenas as unduly burdensome because the subpoenaed parties submitted declarations showing, "with specificity," they had so many responsive documents that it would take weeks to respond—for one organization, in fact, it would have "require[d] the time of at least four to six staff members for a month," and possibly longer. 231 F.R.D. at 51–52. Fusion GPS fails to offer anything of the sort.

Second, in *Diamond Services*, the court quashed subpoenas seeking information from two law firms, including the identity of the client(s) that retained the firms for certain patent-related work. But there, too, the court's ruling was not grounded in an argument that the subpoenaed parties had no responsive information. Rather, the court quashed the subpoenas because: (1) the requesting party failed to first pursue "three more convenient sources" to identify the requested information before subpoenaing the non-party law firms, including through party-directed discovery in other active litigation against the suspected patent infringers in Illinois federal court; and (2) the subpoenas were akin to a "fishing expedition" grounded "only in hypotheticals." 339 F.R.D. at 339–40. *Diamond Services* thus likewise fails to support Fusion GPS's argument to quash on the basis that it reportedly "does not have" the information requested. And *Diamond Services* does not otherwise support quashing the subpoenas here because unlike in that case: (1) Pishevar did first pursue other possible sources for the information he seeks, including several prior proceedings under Section 1782; and (2) the subpoenas are grounded in far more than

"hypotheticals"—Pishevar offers concrete information that reflects, in his view, Fusion GPS's apparent connection to the Forged Police Report, including Anson's deposition testimony.[7]

None of this is to suggest that Fusion GPS necessarily must have the information being sought, or that if Fusion GPS fails to provide Pishevar with any responsive documents, it is necessarily failing to comply with the subpoenas. After all, "one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citation and quotation marks omitted). The point is simply that Fusion GPS's position that it does not have any responsive documents or information should be communicated in a *response* to the subpoenas, not invoked as a basis to quash them without responding at all. From what the Court has seen, Fusion GPS has already gone a long way towards providing a response along these lines. The declarations from Mr. Simpson accompanying Fusion GPS's briefing attest that Fusion GPS: (1) "is not aware of the identity of the 'UK Source,'" (2) "is not aware of receiving or sending a copy of … the 'Forged Police Report,'" and (3) "does not have a copy of … the 'Forged Police Report.'" (ECF No. 12-2; ECF No. 17-1 (attesting that those representations "include[] any information known" to Mr. Simpson and other "former principals of Fusion GPS").) Assuming Fusion GPS's position from its papers remains unchanged, those

---

[7] Fusion GPS insists that there remains at least one other alternative source that Pishevar has not exhausted: an individual named Mark Hollingsworth. (*See* Reply § II.) Anson apparently testified that Hollingsworth suggested to Anson that he knew the identity of the UK Source associated with the Forged Police Report. The Court does not disagree that Hollingsworth may be a lead worth pursuing. But the Court does not find this point requires wholesale rejection of the subpoenas. For one thing, Hollingsworth is based in the UK, and Pishevar's counsel advises that there is no mechanism to compel pre-suit testimony from Hollingsworth under English law. This is a very different scenario than was presented in *Diamond Services*, 339 F.R.D. at 339, where the subpoenaing parties were in active civil litigation against the alleged infringers in U.S. federal court, meaning that they could request the same information from those other sources through routine civil discovery devices. More broadly, as discussed already, Pishevar has done significant legwork through his prior Section 1782 proceedings before turning his efforts toward Fusion GPS here.

statements may well be part of a proper response to the document subpoena. But they do not suffice to excuse Fusion GPS from responding at all under the guise of a motion to quash.

As for the deposition subpoena, the Court is not unsympathetic to Fusion GPS's concern about the potential redundancy of producing a corporate designee to repeat, in deposition testimony, that Fusion GPS has nothing and knows nothing (which is what Fusion GPS says will happen). But the Court also understands Pishevar's interest in having an opportunity to probe the basis for Fusion GPS's representations beyond the handful of sentences in Mr. Simpson's declarations—*e.g.*, asking follow-up questions about the efforts Fusion GPS undertook to search for responsive information, and so on. While there is certainly *some* burden associated with preparing and producing any witness for deposition—and perhaps more so in the context of a corporate deponent under Rule 30(b)(6)—the Court does not believe it rises to the level of an *undue* burden sufficient to prevail on a motion to quash, when weighed against the potential benefit to Pishevar. *See* Fed. R. Civ. P. 26(b)(1) (directing courts to consider whether "the burden or expense of the proposed discovery outweighs its likely benefit," among other factors).

Beyond that, Fusion GPS does not advance any other burden-related arguments that are concrete or concretely developed, which is unsurprising since Fusion GPS's main contention is that it does not have the information being requested at all. Otherwise, to the extent Fusion GPS's arguments implicate specific requests or topics of testimony in the subpoenas, the Court follows Fusion GPS's lead and addresses those points through a relevance lens, where the Court turns next.

### B.    The Subpoenas Seek Information That Is Partially Irrelevant

Fusion GPS separately resists the subpoenas by arguing they seek information that is not relevant to Pishevar's contemplated UK proceedings. (Mot. at 22–23.) Although the Court

disagrees with that proposition as a categorical matter, the Court does find that certain requests and deposition topics in the subpoenas sweep too broadly from a relevance perspective.

Even though "[n]o requirement of relevance is included in the text of Rule 45," *Coleman v. Dist. of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011), it is well settled that "Rule 45 incorporates the Rule 26 relevancy requirement," *Diamond Servs.*, 339 F.R.D. at 338 (citing *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018)); *cf. Watts v. SEC*, 482 F.3d 501, 506–07 (D.C. Cir. 2007) (similar). So the Court properly considers relevance in evaluating a motion to quash a subpoena or a motion for protective order, as Fusion GPS raises here.

As an initial matter, Fusion GPS appears to mount a global relevance objection to the subpoenas in their entirety, arguing that allowing this discovery even though Fusion GPS does not have responsive information "would essentially sanction a wholesale fishing expedition." (Mot. at 20.) But this is just another gloss on Fusion GPS's flawed argument that the Court should quash the subpoenas because Fusion GPS reportedly does not have what Pishevar seeks—except this time on relevance grounds. Relevance does not turn on a responding party's possession or knowledge of the information being sought. As the Court has made clear, if Fusion GPS does not have possession, custody, or control of the information being sought—or knowledge of the information to be asked in deposition—then saying so can be a proper *response* to the subpoenas. It is not, however, a basis to quash them, including under the auspices of relevance.

The Court finds the subpoenas do seek information that is relevant to Pishevar's contemplated UK proceedings, which he represents will focus on civil and criminal redress against the individual(s) responsible for the Forged Police Report. (*See* ECF No. 1 at 16–17.) The subpoenas—except in a few specific respects discussed next—attempt to uncover information that would bear directly on those contemplated proceedings, namely, the identity of the UK Source and

the individual(s) involved with creating the Forged Police Report. And, while not necessarily required, Pishevar has come forward with sufficient information to dispel the idea that these subpoenas spring from some slapdash "fishing expedition," like Fusion GPS suggests. As discussed, Pishevar chased multiple leads—in federal courts from coast to coast—for this information before subpoenaing Fusion GPS. And the current subpoenas are grounded in prior investigative steps that point (correctly or otherwise) to Fusion GPS, including sworn testimony from Anson. The Court understands Fusion GPS strenuously disputes Anson's testimony, but it is not this Court's role—and certainly not in this posture—to resolve that disagreement.[8] For purposes of assessing the appropriateness of the subpoenas, it is enough for the Court to recognize a supportable basis for Pishevar's requested discovery and its apparent relevance.

Moving from the general to the specific, though, the Court finds that certain specific requests and topics of requested deposition testimony sweep more broadly than the information Pishevar purports to be seeking for purposes of the contemplated UK proceedings. In keeping with its authority under Rule 26(c), the Court will grant in part Fusion GPS's motion for a protective order for purposes of limiting the subpoenas in a few respects.

Fusion GPS complains that the subpoenas ask for documents and information about *any client(s)* who may have retained Fusion GPS to perform *any services* related to Pishevar—even if completely unrelated to the Forged Police Report or the UK Source. The Court agrees that those requests, as phrased—specifically, Document Request No. 2 and Deposition Topic No. 2—are overbroad and could elicit information that would be irrelevant to the contemplated UK proceedings. After all, since the inception of this case, Pishevar has insisted that the discovery he

---

[8] For this reason, the Court **DENIES** Pishevar's motion (and supplemental motion) for leave to file the Baram declaration, or in the alternative, for leave to file a sur-reply. (ECF Nos. 19, 20.) The parties' dueling views about Anson's credibility are a complete sideshow to the real questions at issue, so the Court sees no value or benefit in receiving a declaration attesting to Anson's character.

seeks from Fusion GPS is focused on "information about the UK Source and others involved in the creation and distribution of the Forged Police Report." (Appl. at 8.) These representations are all over Pishevar's application. (*See also id.* at 9 ("Petitioner therefore initiated the present Section 1782 action to obtain information from the Respondent about the identity of the UK Source and provenance of the Forged Police Report." (cleaned up)); *id.* at 20 (emphasizing the pursuit of "information about the identities of the UK Source and others involved in the creation and malicious distribution of the forged report, which is highly material to the Contemplated English Proceedings"); *id.* at 27 ("The information sought in the Subpoenas relate to the identity and location of the Forgers (including the UK Source)[.]"); *id.* at 31 ("Petitioner … merely seeks information relating to the individual(s) who forged a police report with the goal of disseminating false information to harm Petitioner's reputation.").) Based on these representations, the Court finds it appropriate to tailor the subpoenas to information about Fusion GPS clients and services related to the Forged Police Report and the UK source, especially since the Court is hard-pressed to see how the broader issues would relate to the contemplated UK proceedings.[9] Beyond that, the Court will cabin the proposed deposition topic related to Fusion GPS's document-retention practices (Topic No. 4), so that it likewise focuses on the relevant issues. And the Court makes a few other conforming modifications and adjustments, as well.

---

[9] Along these same lines, but viewed through a slightly different lens, the Court finds that any information about other clients, if any, who engaged Fusion GPS for work related to Pishevar that is unrelated to the Forged Police Report or the UK Source—and Fusion GPS's corresponding services, if any—would not be "for use" in the contemplated UK proceedings per Section 1782, which would implicate the Court's statutory authority to authorize the discovery. The Court returns to this point later in the ruling.

To these ends, the Court modifies the requests in the document subpoena as follows:[10]

Document Request No. 1:  *Documents sufficient to show* the identity and location of the UK Source who gave you a copy of the Forged Police Report.

Document Request No. 2:  *Documents sufficient to show* the identity and location of any Client who retained you to perform services related to ~~Mr. Shervin Pishevar~~ *the Forged Police Report, such as procuring, obtaining, transmitting, distributing, or creating the Forged Police Report*.

Document Request No. 3:  Any Documents and Communications sufficient to identify the UK Source, *any* Client *encompassed by Request No. 2*, and/or *the Forged Police* Report Author.

The Court likewise modifies some of the proposed deposition topics as follows (note that Topic Nos. 1, 3, 6, and 7 are unchanged, but the Court repeats the full list here for completeness):

Topic No. 1:  Your knowledge of the identity and location of the UK Source who gave you a copy of the Forged Police Report.

Topic No. 2:  Your knowledge of the identity and location of any Client who retained you to perform services related to ~~Petitioner~~ *the Forged Police Report*.

Topic No. 3:  Your knowledge of the identity and location of any creator or disseminator of the Forged Police Report or of the information contained therein.

Topic No. 4:  ~~Procedures, practices, and policies concerning Document retention~~ *Steps taken to preserve documents related to the subpoenas or this action*.

Topic No. 5:  Your information systems, including any electronic preservation and storage systems, as relates to any of the Deposition Topics *(as modified by the Court)* contained in this Subpoena.

Topic No. 6:  Efforts undertaken to gather, search for, review, and produce relevant Documents in response to the subpoena for documents served on You.

Topic No. 7:  Types and categories of Documents created or maintained in the ordinary course of business concerning or relating to the Forged Police Report.

---

[10] The Court's cuts and additions are reflected in strikethrough and italics, respectively. For Request Nos. 1 and 2, moreover, the Court added language to convert what Fusion GPS contends were akin to interrogatories into documents requests, as Pishevar suggested. (Mot. at 17 n.6; Opp'n at 41 n.30.)

All told, these revisions strike an appropriate balance of allowing Pishevar to pursue his professed goal of uncovering potential information that Fusion GPS may have about the Forged Police Report and the UK Source, while protecting Fusion GPS from overly broad or irrelevant discovery which would have no real bearing on the contemplated UK proceedings.[11]

*     *     *

As modified, the Court concludes that the subpoenas seek relevant information and do not impose an undue burden on Fusion GPS. As modified, then, Fusion GPS shall respond.

## II.     Fusion GPS's Challenges Under Section 1782

Fusion GPS separately says the Court should quash or otherwise reject the subpoenas because Pishevar did not (and cannot) satisfy the necessary requirements under Section 1782.

To begin, recall that Judge Meriweather already held that Pishevar made an appropriate showing under Section 1782 to issue the subpoenas. But that ruling was premised on *ex parte* submissions before Fusion GPS appeared. Given that dynamic, courts should allow recipients of discovery authorized under Section 1782 "to challenge the [initial] order's validity." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 471, 475 (5th Cir. 2022) ("[T]o forbid a respondent's request for reconsideration of the merits after an *ex parte* § 1782(a) discovery order … is an unfair and arbitrary result."); *cf. AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) ("[W]hy require a party to produce information the requesting party has no right to obtain?"). So the Court will consider Fusion GPS's specific challenges under Section 1782, especially since Pishevar fully engages with those arguments in response.[12]

---

[11] The parties also squabbled in footnotes over a few technical edits in the subpoenas Pishevar served, like updating the date for compliance and correcting a typo in the publication date of Baram's article. (*See* Mot. at 16 n.5; Opp'n at 35 n.27.) For avoidance of doubt, the Court approves those changes, too.

[12] In fact, Pishevar seems to agree Fusion GPS can properly make these arguments after the original order authorizing the discovery but suggests they should have been encompassed in a formal motion to vacate.

Two layers of analysis govern applications under Section 1782: three statutory elements set forth in 28 U.S.C. § 1782(a), plus four discretionary factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The first layer of the analysis focuses on whether the court "*can* order the requested relief," while the second layer focuses on whether the court "*should* order the requested relief." *In re Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *7 (D.D.C. May 5, 2022) (emphasis in original). Fusion GPS raises challenges at both layers. It argues the subpoenas flunk one of the statutory elements—that the requested discovery be "for use in a proceeding in a foreign or international tribunal"—and that multiple discretionary factors weigh against issuance. The Court addresses each layer in turn.

### A.     The Subpoenas Satisfy the "For Use" Element of Section 1782(a)

Under Section 1782(a), "[a] district court has the authority to grant an application when ... (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d at 17 (citing 28 U.S.C. § 1782(a)); *see also In re Pishevar*, 2023 WL 2072454, at *2 (same). Fusion GPS challenges only the second of the necessary statutory elements, arguing that the discovery is not "for use" in any foreign proceeding because no foreign proceedings were (or are) reasonably contemplated by Pishevar. According to Fusion GPS, Pishevar is instead using this case as "just another effort to determine *whether* to bring proceedings in the UK and is not actually to obtain discovery 'for use' in a contemplated foreign proceeding." (Mot. at 23–24 (emphasis in original).)

---

(Opp'n at 8 n.4.) The Court need not resolve that procedural point, however, because Pishevar agreed to "treat Fusion GPS's arguments as though it had formally moved to vacate." (*Id.*)

To meet the "for use" element, the Supreme Court has made clear that the foreign proceeding does not need to be "pending" or even "imminent." *Intel*, 542 U.S. at 258–59. Rather, the statute "demands only that a proceeding 'be within *reasonable contemplation*' when the discovery is requested." *C5 Capital Ltd.*, 2024 WL 1701650, at *1–2 (D.D.C. Apr. 18, 2024) (emphasis in original) (quoting *Intel*, 542 U.S. at 259). In assessing this element for applications filed before the commencement of foreign proceedings (as here), courts in this District typically look for certain indicia to show the proceedings are truly "contemplated," such as whether the applicant has retained foreign counsel and taken concrete steps to move forward with specific claims based on specific facts. *See, e.g.*, *id.* at *2–3 (finding "for use" element met based on these sorts of factors); *In re Qatar Nat'l Bank*, 2025 WL 445188, at *4 (D.D.C. Feb. 10, 2025) (concluding that Section 1782 application sufficiently identified the "who," "where," and "when" of the contemplated foreign proceedings to satisfy Section 1782's "for use" prong). *But see In re Lucille Holdings*, 2022 WL 1421816, at *14–15 (finding "for use" element unsatisfied where the application provided mere "threadbare" representations about potential litigation that included "only the most general identification of potential claims" in possibly one of "many jurisdictions," without any declaration from foreign counsel outlining specifics).[13]

Here, in authorizing the subpoenas at the outset, Judge Meriweather found the "for use" element satisfied because, even though no foreign proceedings were pending, "Pishevar clearly

---

[13] *In re Lucille Holdings* catalogued a list of "non-exhaustive" factors that frequently help elucidate whether the foreign proceedings are "reasonably contemplated," including: "(1) the contemplated claims; (2) the preparations made for filing those claims (including audits, investigations, retention of foreign counsel, etc.); (3) the tribunal in which those claims will be brought; (4) the time frame in which those claims will be brought; and (5) the evidence supporting those claims." 2022 WL 1421816, at *13. Considering these factors, the court there found the "for use" element unmet and observed, among other things, that the application was "a far cry from, for example, a detailed explanation from legal counsel on the specifics of the contemplated claims and the tribunal where they would be filed." *Id.* at *14.

contemplate[s] filing suit in a foreign tribunal" and provided multiple affidavits from UK counsel that "detail several legal theories that might permit [him] to recover from the UK Source" in the UK proceedings. *In re Pishevar*, 2023 WL 2072454, at *2. The undersigned sees no basis to find otherwise. As noted, Pishevar's application was accompanied by declarations from retained UK legal counsel, which outlined in ample detail the concrete steps that Pishevar will take to move forward with the contemplated civil and criminal proceedings, including the anticipated causes of action and the underlying facts. (*See* ECF No. 1-15 and ECF No. 14-14 (Decls. of Jenny Campbell Afia, retained English legal counsel, outlining anticipated civil proceedings); ECF No. 1-29 (Decl. of Lord Macdonald, retained English legal counsel and former Crown Prosecutor, outlining anticipated criminal proceedings).) Given those detailed submissions, this case falls comfortably within the bounds of other cases that held the foreign proceedings to be "reasonably contemplated" for purposes of Section 1782. And the fact that Pishevar is seeking discovery to confirm the identity of the UK Source so he can initiate proceedings against them does not change the analysis. After all, "Section 1782(a) permits identity-confirming discovery like this." *In re Qatar Nat'l Bank*, 2025 WL 445188, at *4 (cleaned up) (quoting *C5 Capital Ltd.*, 2024 WL 1701650, at *2).[14]

Against that backdrop, Fusion GPS presses two principal arguments in contesting the "for use" element. First, Fusion GPS insists the potential UK proceedings that Pishevar describes cannot be "reasonably contemplated" because he "cannot show any objective progress on the allegedly contemplated proceedings over the course of years." (Mot. at 24–25.) Fusion GPS highlights, to the same end, that Pishevar has used "the same (word-for-word) 'evidence' of reasonable contemplation since he filed his first Section 1782 application in 2019." (*Id.*) That may

---

[14] As previewed, however, the Court believes that those aspects of the subpoenas that seek information beyond the UK Source and the Forged Police Report do not seek discovery "for use" in the contemplated UK proceedings. But the Court's modifications and limitations above suffice to resolve any concerns along these lines for purposes of the Section 1782 analysis, too.

be true. But it ignores the broader context surrounding Pishevar's efforts. After all, his successive Section 1782 proceedings have all been aimed at chasing down the same central piece of information needed to move forward with the foreign proceedings—the identity of the UK Source. When none of the earlier proceedings yielded that information but instead pointed to Fusion GPS (at least as far as Pishevar sees things), Pishevar turned his sights in mid-2021 to Fusion GPS. To the extent Fusion GPS is focused on the passage of time since Pishevar filed the present application, the undersigned will not hold those circumstances against him. The bottom line is that Pishevar has essentially been in a holding pattern with the UK proceedings, and the fact that his Section 1782 application and Fusion GPS's ensuing motion took time to wind their way through the judicial process should not prejudice Pishevar's ability to see this latest effort through.

Second, and relatedly, Fusion GPS contends the requested discovery cannot be "for use" in the contemplated UK proceedings because the statute of limitations on Pishevar's contemplated English civil claims lapsed in August 2023. For his part, Pishevar concedes that certain civil claims he contemplates would be subject to limitations periods that may have lapsed. But he points to evidence from his retained English legal counsel—Ms. Afia—to show he would "have a good prospect of succeeding in postponing the limitation period" based on arguments of fraud and deliberate concealment. (ECF No. 1-15, Afia Decl. ¶ 55.)

So the question becomes what weight, if any, the Court should place on a potentially expired limitations period in foreign proceedings to assess whether those proceedings can still be "reasonably contemplated." Neither side cited any caselaw on this point, nor has the D.C. Circuit addressed it. But the Court's own research uncovered several cases that reinforce its instinct to not inject itself into questions of foreign law. *See, e.g.*, *In re Travessia Securitizadora de Creditos Financeiros X S.A.*, 712 F. Supp. 3d 707, 713–14 (D.S.C. 2024) (refusing to "delve into" the

interplay of statutes of limitations under foreign laws in assessing Section 1782's "for use" factor); *In re England/Bahamas*, 2021 WL 3270074, at *4–5 (S.D. Fla. July 30, 2021) (declining to consider whether contemplated claim would be "time-barred by the statute of limitations" in foreign tribunal because questions on "the merits of the contemplated claim" were "best left to the foreign court"); *cf. In re Kasper-Ansermet*, 132 F.R.D. 622, 631 (D.N.J. 1990) (highlighting "the inherent danger in construing foreign laws" for purposes of evaluating a foreign "statute of limitations"). For practical reasons, and for reasons of international comity, the Court will not deny Pishevar's discovery based on the prospect that his English claims might eventually be foreclosed by a lurking statute-of-limitations issue—especially since his counsel affirmed that he intends to proceed as planned and believes, based on advice from an English lawyer, that any potential limitations impediment can be overcome. To rule otherwise would be tantamount to stepping into the shoes of an English tribunal to render a (premature) ruling on whether an English limitations period would bar an English claim. *Cf. In re Request for Jud. Assistance from the Dist. Ct. in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 527 (E.D. Va. 2010) ("To delve into the merits of litigation pending before a foreign tribunal would be a breach of international comity.").[15]

For these reasons, the Court concludes that Pishevar's application met the "for use" element under Section 1782, and Fusion GPS fails to demonstrate otherwise.

## B.    The Subpoenas Remain Appropriate Under the Discretionary Factors

Having reaffirmed that it *can* properly authorize the section 1782 application, the Court next considers Fusion GPS's arguments as to "whether it *should*." *In re Lucille Holdings*, 2022 WL 1421816, at *7 (emphasis in original). The Supreme Court identified four discretionary factors for courts to consider in weighing Section 1782 applications: (1) whether "the person from whom

---

[15] Moreover, Pishevar argues—and Fusion GPS does not really dispute—that there is no similar statute-of-limitations hurdle associated with his contemplated UK criminal proceedings.

discovery sought is a participant in the foreign proceeding"; (2) the nature and character of the foreign proceedings, and the foreign court's receptivity "to U.S. federal-court judicial assistance"; (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. Fusion GPS challenges all but the second factor. The Court addresses each point in turn.

**First *Intel* Factor**. To start, Fusion GPS contends that even though Pishevar has averred otherwise, he intends to name Fusion GPS as a party in the contemplated UK proceedings. (Mot. at 28.) Pishevar insists otherwise. His response brief affirms, in categorical terms, that "Fusion GPS is not, nor will be, a participant in the foreign proceeding" (Opp'n at 26), and the declarations of Pishevar's English counsel double down on the point (*see* ECF No. 1-15, Afia Decl. ¶ 34 n.8 ("For the avoidance of doubt, the Respondent here will not be a party to any of Petitioner's contemplated proceedings."); ECF No. 1-29, Macdonald Decl. ¶ 27 n.14 (same)). Finally, to eliminate any doubt, the Court put this question directly to Pishevar's counsel at the recent hearing; counsel confirmed, as an officer of the court, that Pishevar "will not make Fusion GPS a party in the UK proceedings," including current and former owners and employees of Fusion GPS, as well. (ECF No. 24, Hrg. Tr. at 21:12-22, 38:23–39:11.) Based on these representations—which the Court expects will be fully adhered to and honored—this factor is no impediment to the discovery.

**Third *Intel* Factor**. Fusion GPS next argues that the third *Intel* factor precludes issuance of at least the deposition subpoena because "deposition testimony is inconsistent with English 'proof-gathering' policies and restrictions." (Mot. at 29.) The Court disagrees. As Pishevar points out (Opp'n at 28), plenty of courts have authorized Section 1782 applications seeking deposition testimony for use in English proceedings. *See, e.g.*, *Azima v. Handjani*, 2022 WL 2788400, at *6–

7 (S.D.N.Y. July 15, 2022); *In re Tovmasyan*, 557 F. Supp. 3d 348, 357–58 (D.P.R. 2021). Another judge in this District recently approved the same. *See C5 Capital Ltd.*, 2024 WL 1701650, at *2 (authorizing a deposition to help identify a defendant on contemplated claims for breach of contract and defamation in the UK). Against that authority, the case Fusion GPS cites in support of its argument, *In re WildBrain Fam. Int'l Ltd.*, 2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020), is readily distinguishable. There, the court did decline to authorize a deposition subpoena on the basis that it would be "in tension with the proof-gathering procedures that govern the UK tribunal overseeing [the] dispute." *Id.* at *2. But the court's language was not a commentary on English law writ large; the "proof-gathering procedures" the court invoked were case-specific limitations imposed by the specific English court presiding over that specific case. *Id.* ("The nature and character of the UK proceedings are not such that they include live pretrial testimony, but only witness statements."). And Pishevar's UK counsel expounds on this point, as well, explaining that the requested deposition "would not circumvent foreign proof-gathering rules" for these and other reasons. (ECF No. 14-14, Afia Supp. Decl. ¶¶ 14–23.) The third *Intel* factor weighs in favor of the discovery.

**Fourth *Intel* Factor**. Fusion GPS finally argues that the fourth *Intel* factor—which asks whether the requested discovery is "unduly intrusive or burdensome"—requires rejection of the subpoenas. On this point, Fusion GPS simply incorporates the same arguments as above. For the reasons explained, the Court does not find the subpoenas impose an undue burden on Fusion GPS, and the Court concludes that the subpoenas—as modestly modified by this ruling—seek relevant information "for use" in the contemplated foreign proceedings and are otherwise appropriate.

*    *    *

All in all, after revisiting the relevant analysis governing applications under Section 1782 based on Fusion GPS's objections, the Court finds that it can and should authorize the subpoenas Pishevar seeks to issue, albeit modified slightly as set forth herein.

## CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Fusion GPS's motion to quash or, in the alternative, for a protective order (ECF No. 12) and **DENIES** Pishevar's motion(s) for leave to file the declaration of Marcus Baram, or in the alternative, leave to file a sur-reply (ECF Nos. 19, 20). The Court will issue a separate accompanying order.

Dated: March 21, 2025

_____

MATTHEW J. SHARBAUGH
United States Magistrate Judge